LOTTIE I. DAY, Admrx. *vs.* BOSTON & MAINE RAILROAD.

York.    Opinion February 26, 1902.

*Railroad.    Negligence.    Death.    Evidence.    Burden of Proof.*

1. In an action for negligently causing the death of a person, the plaintiff has the burden of proving affirmatively due care on the part of the deceased.

2. That the witnesses who could have testified to facts showing such due care are all deceased, does not change the rule that absence of evidence of due care on the part of the deceased will defeat the action.

3. A traveler upon a highway, as he approaches a railroad crossing, should use adequate means to ascertain whether a train be approaching the crossing from either direction. He should listen for the sound of trains on either hand, and look both ways along the track to see if trains be approaching. The greater the difficulties in the way of hearing or seeing approaching trains, the greater should be the effort of the traveler.

4. That the train was approaching the crossing at a much greater rate of speed than allowed by law in that locality, does not lessen the duty of the traveler to use due care upon his own part to avoid collision.

5. Where the evidence only shows that a traveler, with a team upon a highway, approaching a railroad crossing stopped momentarily a few rods from the crossing and then immediately drove upon the crossing, and there is no evidence that he at that, or any other time, listened or looked either way for approaching trains, there is not sufficient evidence of due care upon the part of the deceased.

6. Evidence that such a traveler driving toward a railroad crossing, when near the crossing, was seen looking directly before him at the crossing, and was not looking in either direction along the railroad track, is not sufficient evidence of due care on his part to ascertain the approach of trains.

7.  Evidence that a hand-car passed over the crossing, when the highway
traveler with a team was some five hundred feet therefrom driving along
parallel with the railroad, and that the men on the hand-car saw the trav-
eler on the highway, does not amount to evidence that the traveler noticed
the hand-car.   Quantitative probability as to a past event does not amount
to evidence of such event.

8.  Whatever the probabilities in this case, there is no evidence that the
deceased traveler, as he approached the railroad crossing, observed due
care to ascertain whether a train was approaching and no evidence that
any act of the railroad company or any of its servants induced him to
forego such care.   So far as appears, the case is the too common one where
the traveler either forgot to look and listen, or being aware of the
approaching train, recklessly undertook to cross before it.

Motion by defendant.   New trial granted.

Case for causing the death of Edwin Day upon a grade crossing of
the street with the defendants' railroad in North Berwick.   The
plaintiff had a verdict of $4000.

The facts are fully stated in the opinion.

*E. P. Spinney*, for plaintiff.

The train ran at an enormous rate of speed, so that it attracted
especial attention of all observers that day.   Said train was run
towards and over Junkin's crossing that day at the rate of sixty
miles per hour.   Junkin's crossing being near the compact part of
the town of North Berwick and without gates or flagman or auto-
matic signals, the defendant therefore ran its train in violation of the
public laws of Maine.   Chap. 51, § 75, as amended by chap. 377
of statute of 1885.

That was negligence on the part of defendant, per se.   *State* v.
*B. & M. R. R.*, 80 Maine, 431 and 432, and cases; *Hooper* v.
*B. & M. R. R.*, 81 Maine, 265, and cases.

Though at common law it is not negligence per se to run a train
at a rapid rate over a crossing, yet the speed at which a train is run
over a crossing may be so great as to be negligence under the cir-
cumstances as a matter of fact, and this is a question for the jury
on the facts of each case.   The speed of a train at a crossing should
not be so great as to render unavailing the warnings of its whistle
or bell, and this caution is especially applicable when their sound is
obstructed by wind, and other noises, and when intervening objects

prevent those who are approaching the railroad from seeing a coming train. 1st Am. & Eng. Ency. of Law, Vol. 4, pp. 932 and 933 ; *Salter* v. *Utica R. R.* 88 N. Y. 42 ; *Wild* v. *Hud. Riv. R. R.* 29 N. Y. 315 ; 14 Am. & Eng. R. R. Cases, 670; Pierce on Railroads, 355 ; *Warner* v. *N. Y. C. R. R.* 44 N. Y. 465.

Junkin's crossing is in the village of North Berwick and near the compact part of the town, and crossing the Boston & Maine Railroad, Eastern division, at grade at an angle of forty degrees and thirty minutes. At this crossing, at the time of the accident, there were no gates, or flagman, or automatic signals. If defendant run trains faster than six miles per hour, this was in violation of R. S., c. 51, § 75, as amended by c. 377 of the statute of 1885. This was negligence per se. *Hooper* v. *B. & M. R. R.* 81 Maine, 266 ; *Webb* v. *P. & K. Railroad,* 57 Maine, 134 ; *Whitney* v. *M. C. R. R. Co.,* 69 Maine, 210 ; *Plummer* v. *East. R. R. Co.,* 73 Maine, 593 ; *State* v. *B. & M. R. R.* 80 Maine, 431, and cases; *Norton* v. *E. R. R. Co.,* 113 Mass. 366 ; *Prescott* v. *Same,* 113 Mass. 370 ; *Pollock* v. *Same,* 124 Mass. 158; *Eaton* v. *Fitchburg R. R. Co.,* 129 Mass. 364.

No bell or whistle was sounded on that engine as required by law prior to said trains crossing Junkin's crossing.

In not sounding bell and whistle the defendant violated c. 51, § 33, of R. S., and was therefore guilty of negligence per se.

*Webb* v. *P. R. R. R. Co.,* 57 Maine, 134; *Whitney* v. *M. C. R. R. Co.,* 69 Maine, 210 ; *Plummer* v. *E. R. R. Co.,* 73 Maine, 593 ; *Com.* v. *B. & W. R. R. Co.,* 101 Mass. 202 ; *Sonier* v. *B. & A. R. R. Co.,* 141 Mass. 10 ; *Renwick* v. *N. Y. C. R. R. Co.,* 36 N. Y., 132 ; *Smedis* v. *B. & R. B. R. R. Co.,* 88 N. Y. 13 ; *Y. & C. U. R. R. Co.* v. *Loomis,* 13 Ill. 548 ; 21 Am. & Eng. Ry. Rep. 532 ; *Ernst* v. *Hud. R. R. R. Co.,* 32 Barb. 159 ; *State* v. *B. & M. R. R. Co.,* 80 Maine, 431, and cases ; *Hooper* v. *B. & M. R. R.* 81 Maine, 265.

While it is a general rule that a person about to enter upon a railroad crossing must look and listen for approaching trains, yet the rule is not invariable, and will not be applied when the circumstances were such as to afford the plaintiff a reasonable excuse for not looking, and it may often be a question for the jury to determine whether the conduct of the plaintiff is in fact negligent. Buswell on Personal

Injuries, pp. 245, 246; *Piper* v. *Chi. Mil. & St. P. R. R.* 77 Wis. 247; *Breekenfelder* v. *L. S. & M. S. R. R.* 44 N. W. Rep. 957; *Bare* v. *Penn. R. R.* 135 Penn. 95; *State* v. *Union R. R.* 70 Md. 69; *Kane* v. *N. Y. N. H. & H. R. R.* 9 N. Y. Sup. N. E. Rep. 879.

In the case of *Duame* v. *Chi. & N. W. R. R.* where the facts were similar to those stated above, except that it was a train instead of a hand-car, the court said, "That when a train had passed a crossing while the injured person was within a few rods of it and driving at a trot, and had passed on out of sight so as to induce the belief that it was to continue on its course in same direction, and there was no reason to suppose that it would immediately return, the general rule of contributory negligence in a person attempting to cross was held not applicable." *Duame* v. *C. & N. W. R. R.* 92 Iowa, 227; Buswell on Personal Injuries, p. 247.

When there is evidence of negligence upon the part of the defendant, the law will not presume in the absence of proof, that the negligence of deceased contributed to his death. *Lehigh V. R. R.* v. *Hall,* 61 Penn. St. 361.

The traveler has a right to assume and rely upon the discharge of duty on the part of the corporation and its servants. *Ernst* v. *H. R. R. R.* 35 N. Y. 25; *Shear. & Red.* on Negligence, p. 31.

The fact that a hand-car went by on the single track and that the customary warnings on the engine were not given, were equivalent to Mr. Day to an invitation to cross and an assurance of safety. *Smith* v. *M. C. R. R.* 87 Maine, 339, and cases supra.

Whether a person injured at a railroad crossing was or not, at the time of the collision, in the exercise of due care, is a question of fact for the jury to determine from the evidence under proper instruction. Whether or not the railroad company is guilty of negligence in not employing a flagman at a certain crossing is a question of fact. *Webb* v. *P. & K. R. R.* 57 Maine, 117, and cases.

*Geo. C. Yeaton,* for defendant.

If it be admitted (which it is not) that this crossing is "near the compact part of the town," manifestly the rate of speed of the train could have had little significance when and where, as here, neither

the time of day, condition of weather and atmosphere, or physical surroundings could oppose any obstruction to a very full and liberal opportunity for good "eyes and ears" to have rendered their normal service, and seasonably have informed the traveler along the highway of an approaching train.

For no omission of duty on the part of defendant can cancel his obligation to perform his own. To this conclusion authorities all concur. Even in those jurisdictions—of which this is not one—where it is held that violation of a police ordinance, or statute, is per se negligence, it is also almost invariably held that when contributory negligence is also proved, or, here, when plaintiff fails to prove its absence, the violation of the ordinance or statute is not the proximate cause.

See *Horn* v. *Rio Grande & Western Ry. Co.*, 19 Am. & Eng. R. R. cases, annotated (new series).

The same follows relating to the giving of required statutory signals of approaching trains, or their omission, although defendant here strenuously contends that the giving of these signals was completely proved. Five witnesses—two of whom were women living near, and both wholly disconnected, in all ways, from defendant's service, and thus entirely relieved from the standing smirch of such relation, and somewhat unwilling witnesses also—testify that they did hear the crossing-signal whistle sounded. That some other people did not hear it has little probative force under any circumstances, still less under these.

It has been well settled for a long time, not only in this jurisdiction, but in widely separated jurisdictions, indeed, almost universally, in every court entitled to respect,—State, Federal, Canadian, English, Continental, others,—that he who approaches a grade crossing over the tracks of a steam railroad with which he is familiar (as deceased must have been, a stablekeeper living within one-half mile, cutting and hauling hay across it) is bound to heed the fact of the ever-present peril which confronts him whenever he attempts to cross. His duties are plain, explicit, and never to be omitted with impunity. Whatever the railroad corporation may do, or neglect to do, his duty is constant and abiding.

Furthermore, if, as here, examination, comparison, and analysis of all the evidence renders it, if not morally certain, at least extremely probable that deceased did see the approaching train and miscalculated the chance of safety in the attempt to pass over ahead of it, neither he nor his representative can hold defendant responsible for the calamitous consequences of his hazardous speculation. It is fallacious to argue, and untenable alike in logic and in law, that such a sufferer, deceived by his own estimate of chances, may recover. No modern court of repute has ever held that a man might, at his option, face such visible danger and be excused because he erroneously estimated its proximity or degree. *Merrigan* v. *B. & A. R. R.* 154 Mass. 189, 191; *Mott* v. *Detroit G. H. & M. Ry. Co.* (Mich. May 9, 1899), 15 Am. & Eng. R. R. Cases, 113; *Chic. &c. R. R. Co.* v. *Houston,* 95 U. S. 697, 702; *No. Pac. R. R. Co.* v. *Freeman,* 174 U. S. 379, 384.

See also *Central Ga. R. R. Co.* v. *Forshee,* 27 So. Rep. 1006; *Hopkins* v. *So. Ry. Co.,* 110 Ga. 85; *Baltimore & Ohio S. W. Ry. Co.* v. *Keck,* 57 N. E. Rep. 112; *Chicago & E. I. R. Co.* v. *McElhaney,* 87 Ill. App. 420; *Chicago & A. R. R. Co.* v. *Williams,* 87 Ill. App. 511; *Peturin* v. *St. Louis, I. M. & S. Ry. Co.,* 156 Mo. 552; *Houston & T. C. R. Co.* v. *Knipstein,* 55 S. W. Rep. 754; *Getman* v. *D. L. & W. R. Co.,* 162 N. Y. 21: *Henavie* v. *N. Y. Central & H. R. R. Co.,* 60 N. Y. S. 752; and a long array of authorities cited in a note to Elliott on Railroads, § 1168.

No legal doubt can exist that the burden of proof to establish the exercise of due care on the part of deceased is upon plaintiff, and that if the evidence is equally consistent with the exercise of it or the want of it, she cannot prevail. *Murphy* v. *Deane,* 101 Mass. 455; *Dowd* v. *Chicopee,* Id. 93; *Dyer* v. *Fitchburg R. R.* 170 Mass. 148; *Walsh* v. *Boston & Maine R. R.* 171 Mass. 52. And while it is true this need not be shown affirmatively, but may be inferred from circumstances, yet if "there is only a partial disclosure of the facts, and no evidence is offered showing the conduct of the party injured, in regard to matters specially requiring care on his part, the data for such an inference is not sufficient; it can only be warranted when circumstances are shown which will fairly indicate care, or exclude

the idea of negligence on his part." *Mayo* v. *Boston & Maine R. R.* 104 Mass. 137; *Crafts* v. *Boston,* 109 Mass. 519; *Hinckley* v. *Cape Cod R. R. Co.,* 120 Mass. 257-262; *Gerety* v. *R. R.,* 80 Pa. St. 274-277. Nor can this ever be left to conjecture (*Barton* v. *Kirk,* 157 Mass. 303), which is not allowed to supply the place of proof. *Moore* v. *Boston & Albany R. R. Co.,* 159 Mass. 399. And this is as well settled in Maine as elsewhere. *Lesan* v. *Maine Central R. R.* 77 Maine, 85; *Merrill* v. *No. Yarmouth,* 78 Maine, 200; *Allen* v. *Maine Central R. R. Co.,* *supra*; *McLane* v. *Perkins,* 92 Maine, 39.

SITTING : WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

EMERY, J. The evidence for the plaintiff shows the following : The plaintiff's intestate, Edwin Day, in the forenoon of a summer day was driving alone in a hay rack drawn by one horse along a village street toward a grade crossing of the street with the railroad tracks of the defendant company in North Berwick. He was standing up next the front rail of the hay rack as he was thus driving. When first seen by any of the witnesses, he was driving along Portland street nearly parallel with the railroad tracks. He then turned from Portland street into Wells street which led more directly to the crossing, and over it at an angle of $43\frac{1}{2}$ degrees with the track. The distance from the turn into Wells street to the crossing was 471 feet. He was "jogging along," as the plaintiff's witness described it, at a rate of about five miles an hour. He stopped momentarily some twenty feet from the crossing and then drove immediately upon the crossing, where he was struck and killed by a train of the defendant company, which had come along the track from the direction thus partially behind him. He was about thirty-five years of age, in the full possession of all the usual faculties, and was familiar with the crossing and the surroundings.

There is no evidence that in approaching the railroad crossing, Mr. Day took any precautions whatever to ascertain whether a train was also then approaching the crossing from either direction. True,

he stopped momentarily some twenty feet from the crossing, but it does not appear that he looked, or listened, or took any other measures to ascertain what might be approaching on the railroad tracks. There is no evidence for what purpose he stopped there. He may have stopped to look at something else than railroad or trains, or his horse may have stopped of its own volition without any act or will of Day's. We can only conjecture. There is no evidence. Nor can we assume, in the absence of evidence, that he did then look and listen for trains. On the contrary, it would seem that he could not have looked and listened at that point for trains without seeing or hearing this train, which, according to the plaintiff's own theory of its speed, was then less than 300 feet away. It is also true that a witness testified that as he was going from the crossing on Wells street he met Day at a point three or four rods from the crossing, and that Day then appeared to be looking "straight ahead toward the crossing, and not off to the right," (which would be toward the railroad). This does not tend to show requisite care and precaution on the part of Day. There was then, at that distance, no occasion for him to look at the crossing itself. Nothing then on, or passing, the crossing could endanger him at that distance. Looking straight ahead at the crossing would give him no information as to what might be on the tracks at a distance from the crossing and approaching it. Looking at or toward a railroad crossing is clearly not enough precaution for any traveler who proposes to pass over. He should look both ways along the tracks, to see what is approaching the crossing as well as what is on it.

It is the firmly settled law of this state that in approaching a railroad crossing at grade the traveler upon the highway, to be in the exercise of ordinary prudence, must bear in mind that trains are liable to be approaching the crossing at that same time, and at any moment, from either direction;—that the train cannot turn aside for him, and cannot be easily stopped to avoid him. He must, therefore, to comply with his duty to exercise ordinary care, be on the alert to ascertain by the use of his senses of sight and hearing, and by any other appropriate means, the approach of trains, and to seasonably avoid collision with them. He can usually avoid collision readily, easily

and promptly, if he be properly careful and alert while approaching the crossing. In view of the obvious peril at grade crossings and of the obvious inability of the train to turn out or stop instantly, it has further been repeatedly held that care commensurate with the peril requires the traveler upon the highway to look and listen for trains at the very time he is approaching the crossing, and that an omission to take this ordinary precaution is, if unexplained, contributory negligence per se, as matter of law, and will bar an action for the collision even though the railroad company was negligent in the premises. He must bear in mind, what is of common knowledge, that railroad trains move much faster than the ordinary pace of a horse drawing a vehicle along the highway and hence must not rest content with an observation made at considerable distance from the crossing, especially if there be objects or circumstances to obstruct his vision or hearing at the more remote point. He must be mindful, must observe, look and listen, as he approaches close to the place of peril, the crossing. *Chase* v. *M. C. R. R. Co.,* 78 Maine, 346; *Allen* v. *M. C. R. R. Co.,* 82 Maine, 111; *Smith* v. *M. C. R. R. Co.,* 87 Maine, 339; *Romeo* v. *Boston & Maine R. R.* 87 Maine, 540; *Giberson* v. *B. & A. R. R. Co.,* 89 Maine, 337.

It is further the settled law of this state that it is incumbent upon a plaintiff suing to recover damages alleged to have resulted from the negligence of another party, to affirmatively prove his own freedom from contributory negligence in the premises. There is no presumption that a plaintiff in such case was thus free from contributory negligence, though sometimes the circumstances may of themselves show that he was, as in the case of a passenger injured by the negligence of a railroad company, while sitting in his seat doing nothing. In the absence of affirmative evidence tending to show that the plaintiff, himself being an actor, exercised on his part the care and effort incumbent on him to avoid the injury he cannot maintain his suit. That the only witness who could testify to facts showing such care is dead, and the plaintiff is thus left without the evidence, does not enable the plaintiff to recover without the evidence. In support of the foregoing proposition it is only necessary to cite the late case of *McLane*

v. *Perkins*, 92 Maine, 39, 43 L. R. A. 487; where the proposition is fully reviewed and affirmed.

In this case the plaintiff contends that the evidence shows circumstances and conditions which made it difficult for Mr. Day to see or hear the approaching train, or to obtain any other information of its nearness to the crossing. If such was the case, it was the duty of Mr. Day to make all the more effort to ascertain the truth; — but the case is barren of evidence that he made any effort whatever, great or small. The difficulty of seeing and hearing the train is therefore immaterial, since it is not claimed that it was impossible with any effort to know of the train's approach. It is the absence of evidence of any, even the smallest, effort on the part of Day, not his inability to see or hear with reasonable effort, which convicts him of contributory negligence.

The foregoing statement of the law and the evidence would seem to require a judgment for the defendant, notwithstanding the verdict of the jury in favor of the plaintiff. A verdict of a jury on matters of fact, and within even their exclusive province, cannot be the basis of a judgment where there is no evidence to support it, or when they have made inferences contrary to all reason and logic. In this case Mr. Day, as he approached the crossing, had a plain duty long and clearly defined by law, failing to perform which, he or his representative could not sustain an action. There is no evidence that he did that duty or any part of it, and such a fact must be established by evidence and not assumed.

But the plaintiff contends in this case that some of the defendant company's servants so conducted during Mr. Day's approach to the crossing, as to assure him that no train was approaching so near as to endanger him in attempting the crossing when he did. This assurance was given, the plaintiff says, by some of the section men propelling a hand-car along the track over the crossing toward the direction from which the train was coming. The argument is that Mr. Day, seeing this hand-car and knowing that it must go nearly 1000 feet to reach a switch or side track where it could let a train by, was thereby assured that no train from that direction would reach the crossing until that 1000 feet had been first covered by the

hand-car and ·then by the train, which would have allowed him ample time for crossing safely; and that a jury might reasonably find that it was not negligence in Mr. Day to rely on that assurance and cease his own personal outlook for the approach of such a train at such a time as would endanger him. *Hooper* v. *B. & M. R. R.* 81 Maine, 260, and *York* v. *M. C. R. R. Co.*, 84 Maine, 117, 18 L. R. A. 60, are cited.

It appears in evidence that the defendant company's section men did propel a hand-car along the track over the crossing in the direction named, but this was while Mr. Day was on Portland street some fifty feet from the turn into Wells street and while he was traveling parallel with the railroad and not toward it. The distance from the crossing on Wells street to its junction with Portland street was 471 feet. The section men, or some of them, as they passed the crossing noticed Mr. Day and his team at the locality named, on Portland street near Wells street.

Unfortunately for this contention there is no evidence that Mr. Day noticed this hand-car although it was within the range of his vision. There are no circumstances tending to show that he noticed it, or if he did notice it, that it in the least influenced his after conduct. He was on Portland street at the time, traveling parallel with the railroad, and, if he faced as he was driving, was not facing the car or the track. His momentary stop some twenty feet from the crossing does not tend to show that he noticed the car. That stop was some minute or two after the car had passed and after the section men on the car saw him.

Of course, it is possible that he noticed the hand-car. Indeed, it may be quantitatively probable that he did. Quantitative probability, however, is only the greater chance. It is not proof, nor even probative evidence, of the proposition to be proved. That in one throw of dice there is a quantitative probability, or greater chance, that a less number of spots than sixes will fall uppermost is no evidence, whatever, that in a given throw such was the actual result. Without something more, the actual result of the throw would still be utterly unknown. The slightest real evidence that sixes did in fact fall uppermost would out weigh all the probability otherwise.

Granting, therefore, the chances to be more numerous. that the plaintiff's intestate did notice the hand-car than that he did not, we still have only the doctrine of chances. We are still without evidence tending to actual proof. However confidently one in his own affairs may base his judgment on mere probability as to a past event; when he assumes the burden of establishing such event as a proposition of fact, as a basis for a judgment of a court, he must adduce evidence other than a majority of chances.

The situation was very different from that in either of the cases cited. In each of those cases the traveler was directly at the crossing at the time of the event on the crossing. In the one case the gates were up when the traveler reached the gated crossing and remained up. In the other case the traveler was at the crossing, halted and waiting, as the train passed directly before his face. In this case at bar the event occurred when the traveler was 500 feet distant from the crossing, traveling parallel with the railroad, and nothing appears in evidence or the situation that would force the event upon his attention as in the other cases.

For lack of evidence, even from circumstances, that Mr. Day in fact noticed the hand-car as it passed along the track and was influenced by it to cease further outlook, that episode does not suffice to show that Mr. Day took the requisite precautions, or was excused from taking them by any assurance of safety from the company's conduct. The whole evidence does not show, either that he took the precaution, or that he in fact relied upon assurances of safety.

The plaintiff calls attention to evidence that this crossing was in a compact part of the town where the speed of trains was limited by law to six miles an hour when passing the crossing, and that this train passed the crossing at a much greater rate of speed. She contends that Mr. Day could properly assume, and act upon the assumption, that the train was not moving more than the lawful rate of six miles an hour, and therefore if he could have safely crossed the track in front of a train moving only at that rate, she has shown that he was free from contributory negligence in crossing the track when he did. Unfortunately for this contention, also, there is no evidence that Mr. Day consciously saw or heard the train at all, or reasoned about

its speed as compared with his own. So far as the evidence shows he went upon the crossing entirely unmindful of what was approaching. Had he noticed the train it was his duty to note its actual rate of speed and take no chances of collision with it.

The plaintiff further calls attention to evidence that no bell was rung, no whistle was blown, and no other signal of approach was given by the train. She contends that the absence of all signals of approach was an assurance of safety. As to this contention, it has been repeatedly held that the traveler upon the highway must not depend solely upon any signal from the railroad company's servants, but must in the absence of such signals still be on his guard and endeavor to ascertain the actual fact whether or not a train be approaching. See cases cited above.

So far as now appears, the case is the too common one where the traveler upon the highway either took no adequate care to ascertain whether a train was approaching, or else, being aware of the approaching train, recklessly undertook to cross before it.

We find in the law and the evidence no foundation for this verdict and it must be set aside.

*Motion sustained.    Verdict set aside.*