(122 N. W. 865.)

---

H. J. HOPE v. GREAT NORTHERN RAILWAY CO.

Opinion filed October 11, 1909.

**Railroads — Accident at Crossing — Contributory Negligence.**

1. Plaintiff drove his team and wagon to town with a load of wheat. After unloading the wheat at an·elevator south of the rail-

road track and east of the highway crossing the railroad track, he drove out of the east side of the elevator, swung west to the highway and turned north to the crossing. His view of approaching trains from the east was completely obstructed by freight cars standing on the side tracks and the three elevators. It was a cold day. He was dressed quite warmly, and had his cap pulled down about the edges of his ears. He had a lumber wagon with a double box, and was driving quite rapidly. The ground was frozen, and the wagon made considerable noise. When he was about thirty feet from the main track he jerked up his team so as not to gallop over the crossing. Just then the team gave a jump and struck the side of the engine of the regular passenger train coming from the east. Both the horses were injured and the wagon badly damaged. The driver did not look for any train coming from the east after he drove out of the elevator, neither did he hear any train coming or make any effort to ascertain if there was one. *Held* he was guilty of contributory negligence.

**Same — Last Clear Chance.**

2. *Held,* that the doctrine of the last clear chance, to prevent an accident, is not applicable under the evidence in this case.

Appeal from District Court, Cavalier county; *Fisk, J.*

Action by H. J. Hope against the Great Northern Railway Company. Judgment for defendant, and plaintiff appeals.

Affirmed.

*Dickson & Johnson,* for appellant.

*C. J. Murphy, Fred S. Duggan,* and *Arthur LeSueur,* for respondent.

CARMODY, J. The plaintiff sued to recover the value of horses and a wagon damaged in a collision with one of defendant's passenger trains at the city of Langdon, N. D., on the 5th day of December, 1902. The accident occurred at the crossing of the railroad tracks and Third street in said city, and about 100 feet west of the passenger depot. Third street, being the main street in the city of Langdon, runs north and south, and the railroad tracks cross it running northwesterly and southeasterly. The main railroad track is the most northerly of three parallel tracks. South of it, and about ten feet distant, is a passing track, and south of this passing track and about twenty-two feet distant from it is the elevator or side track. The depot is located on the north side of the main track, about 100 feet east from Third street crossing. Three grain elevators are on the south side of the tracks and east of Third street. On the day of the accident both the pass-

ing track and the side track were well filled with freight cars on both sides of the crossing. The cars on the east side of the crossing came up to about twenty-five or thirty feet of the crossing, most of the cars being on the passing track. There was also a string of cars on the side track along the elevators, and cars on both tracks west of the crossing, leaving a passageway of 60 feet or so. Plaintiff's man, B. Hope, drove the team and wagon in question to town that day with a load of wheat, and had to cross south over the tracks on the Third street crossing to get to the elevators. After waiting a few minutes to allow a freight train to move east by the crossing, he crossed to the south side, and took his load of grain to the most easterly elevator. After unloading the grain he drove eastward out of the elevator, then turned south and west and drove back along the route he had come toward the crossing with his team on the trot or gallop. The weather was pretty cold, the ground frozen hard, and the empty wagon with a double grain box, made a great deal of noise. As he drove south of the elevators westward toward the crossing they obstructed his view of the tracks, and the spaces between the elevators that he passed were blocked by the freight cars, and by this freight train, which extended from the crossing some distance beyond the elevators, occupying the passing or center track. They completely obstructed Hope's view of the main track, and the fireman's view of the highway. Hope drove down from the elevator platform and around back to the crossing over the first and second tracks, and into the side of the engine of the incoming passenger train on the third track, and from the time he left the elevator until the collision, his horses, then under control, were on the trot or gallop, and did not stop, except momentarily between the first and second tracks, where the driver pulled them in because, as he said, he "did not want to gallop over the tracks." John Lee, a section man, was shoveling snow off of the first track at the crossing when the horses came up to cross it. He testified he endeavored to stop the rig by waving his shovel at the driver and calling to him at the top of his voice. The driver saw him, but, according to his testimony, he did not see Lee wave his shovel or hear him call. The team almost came to a stop between the first and second tracks, and seemed to start forward again on the jump and continue until they struck the engine; they struck the left side of the engine and were badly injured; the driver escaped uninjured.

The train which struck the horses was the regular daily passenger train going west; it was due at 12:30 and was about an hour late. The driver knew the time of the train's arrival, and also knew that sometimes it was late. According to the testimony of the train crew and other employes of defendant, the brakes had been applied some 900 feet east of the crossing, and the engineer blew the station whistle at the usual point, but did not see the horses until after the accident. The fireman, according to his testimony, was in his window ringing the bell and saw the horses as they emerged from between the cars on the passing track not more than 30 feet from the engine. He saw them strike the engine on the steam chest on the left side. There was a dent where they struck. The defendant's witnesses, Adams, Bissell, Hill, McNiell, Carlson, and Gunderson, testified that the engine whistle was blown as usual for the station, and the fireman was ringing the bell as the train came in. The driver and two other witnesses for plaintiff, then at the depot, did not hear those signals, but would not testify they were not given.

The case was tried by Hon. W. J. Kneeshaw, presiding judge, and a jury. The defendant at the close of the testimony moved for a directed verdict in its favor, which motion was denied. The case was submitted to the jury, who found a verdict for plaintiff. Thereafter the defendant moved the court for judgment notwithstanding the verdict, which motion was granted by Hon. C. J. Fisk, the judge before whom it was heard. From the judgment notwithstanding the verdict, this appeal was taken.

The point for consideration is whether, under the evidence, plaintiff's driver was guilty of negligence proximately causing the injury, or of contributory negligence as a matter of law. We think the order of the court, granting judgment for defendant notwithstanding the verdict, was right. It conclusively appears that the driver was guilty of contributory negligence. He drove south over the crossing in question, with a load of wheat about 10 minutes before the accident, so that he knew the situation there, and the location of the tracks. After unloading the wheat he turned around and returned to the crossing, driving parallel to the tracks and south of them, not stopping once in this drive. There was a string of box cars on the center track and other cars on the elevator track, and three elevator buildings, all of which shut out the view of the main track from him, and the view of the driver and team from the en-

gineer and fireman of the passenger train. The driver looked east as he was going down the elevator bridge and did not see any train, saw the cars on the elevator track and passing track. It was quite cold, and he was dressed warmly, had his cap down about the edge of his ears. The ground was frozen and the double box on the wagon was empty. The wagon made a noise on the hard road so that he did not hear the train or any noise except that made by the wagon. From the time he left the east elevator until the collision his team did not stop, except that, after he crossed the first track, he pulled up the lines and momentarily stopped them; he said because he "did not want to gallop over the track." He said: "They were just standing still for a moment, that was just for an instant; I jerked them back, and they stopped like that, and away they went again. I was between the box cars when the horses jumped; they took fright." His idea in pulling them up was just so they would not go fast over the track. The first he saw of the passenger train or heard of it was when he saw the train and horses and smoke all at once; all went together. According to the testimony the train was running from 12 to 20 miles per hour. There was no point after he left the elevator at which it was possible for him to see the main track or the train coming on it from the east. According to his own testimony he paid no attention whatever to the approach of the train on the main track. At no time did he stop his horses or listen for the train. The noise of the moving train conveyed no warning to him. The noise of his wagon on the hard frozen ground probably prevented him from hearing it. It is conclusively established by the driver's own testimony that he did not take the care commensurate with the very apparent dangers of this crossing. A person is bound to use care commensurate with the known or reasonably apprehended danger. It is an established rule of the courts that a traveler, about to cross a railroad track, must bear in mind the dangers attendant upon crossing, and vigilantly use his senses of sight and hearing in the endeavor to avoid injury. He is required to do all that care and prudence would dictate to avoid injury. "Those who attempt to cross a railroad track at a public highway crossing must exercise ordinary care, in view of all the surrounding circumstances, to avoid receiving an injury by collision with trains. But, in the very nature of things, the standard of such care cannot be absolutely fixed, * * * and the general rule is that a person about to cross a track must bear in mind the

dangers attendant upon crossing, and vigilantly use his senses of sight and hearing in the endeavor to avoid injury. * * * The traveler, however, is rigidly required to do all that care and prudence would dictate to avoid injury; and the greater the danger, the greater the care that must be exercised to avoid it. And where, because of physical infirmities, darkness, snow, fog, the inclemency of the weather, buildings, or other obstructions and hindrances, it is more than usually difficult to see or hear, greater precaution must be taken to avoid injury than would otherwise be necessary, and, under such circumstances, there can be no excuse for the failure to adopt such reasonable precautions as would probably have prevented the injury." 7 A. & E. Enc. of Law (2d Ed.) 428-435.

The driver was charged with knowledge that this was a dangerous place, being a railroad crossing, and, as a matter of law, it cannot be assumed that cars are not approaching on railroad tracks, and there is no danger therefrom. He was bound to assume that cars were coming till he had satisfied himself by direct evidence to the contrary, and to use care commensurate with this state of facts. Bond v. Lake Shore Ry. Co., 117 Mich. 652, 76 N. W. 102; Elliot v. Ry. Co., 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068; Chicago, etc., Ry. Co. v. Smith, 141 Fed. 930, 73 C. C. A. 164; Day v. Ry. Co., 96 Me. 207, 52 Atl. 771, 90 Am. St. Rep. 335.

In the aspect of the evidence most favorable to plaintiff, he cannot recover in this action. The driver's course of conduct amounted to contributory negligence as a matter of law. Payne v. Ry. Co., 108 Iowa, 188, 78 N. W. 813; Smith's Adm'r v. Norfolk, etc., Ry. Co., 107 Va. 725, 60 S. E. 56; Haas v. Ry. Co., 47 Mich. 401, 11 N. W. 216; Bond v. Ry. Co., 117 Mich. 652, 76 N. W. 102; Proper v. Ry. Co., 136 Mich. 352, 99 N. W. 283; Rogers v. Ry. Co., 187 Mass. 217, 72 N. E. 945; Shatto v. Ry. Co., 121 Fed. 678, 59 C. C. A. 1; Ry. Co. v. Houston, 95 U. S. 702, 24. L. Ed. 542; Hook v. Ry. Co., 162 Mo. 569, 63 S W. 360; Wands v. Ry. Co., 106 Mo. App. 96, 80 S. W. 18; Burns v. Ry. Co., 136 Ala. 522, 33 South. 891; Fletcher v. Ry. Co., 149 Mass. 127, 21 N. E. 302, 3 L. R. A. 743; Debbins v. Ry. Co., 154 Mass. 402, 28 N. E. 274; Marty v. Ry. Co., 38 Minn. 108, 35 N. W. 670; Shufelt v. Ry. Co., 96 Mich. 327, 55 N. W. 1013; Ihrig v. Ry. Co., 210 Pa. 98, 59 Atl. 686; Seefeld v. Ry. Co., 70 Wis. 216, 35 N. W. 278, 5 Am. St. Rep. 168; Carter v. Ry. Co., 72 Vt. 190, 47 Atl. 797; State v. Ry. Co., 102 Md. 257, 62 Atl.

754; Railway Co. v. Holden, 93 Md. 417, 49 Atl. 625; Day v. Ry. Co., 96 Me. 207, 52 Atl. 771, 90 Am. St. Rep. 335; Gulder v. Ry. Co., 70 N. J. Law, 196, 56 Atl. 124; Cleveland Co. v. Heine, 28 Ind. App. 163, 62 N. E. 455.

In Elliott v. Ry. Co., supra, the court said: "It can never be assumed that cars are not approaching on a track or that there is no danger therefrom."

In Chicago, etc., Ry Co. v. Smith, supra, the court said: "The laws requires of one going into so dangerous a place the vigilant exercise of his faculties of sight and hearing at such short distance therefrom as will be effectual for his protection, and if this duty is neglected, and injury results, there can be no recovery, although the injury would not have occurred but for the negligence of others."

In Shatto v. Ry. Co., supra, the court said: "Plaintiff approached a railroad crossing in a city, with which he was familiar, at about 4:30 in the afternoon. The wind was blowing strongly from the south, and his view of approaching trains from the north was obstructed by a freight train standing on the switch track nearest him, and by high board fences, dwelling houses, piles of lumber, etc. Plaintiff had his ears covered, and, as he approached the crossing, looked and listened, and, hearing no train, continued driving his horse at a trot until within 100 feet of the track, when the horse began prancing or single-footing. Plaintiff drove between the cars of the freight train, which had been cut at the crossing, and, when his horse got his head beyond the cars, he swerved and jumped to the left, when plaintiff was struck by a train approaching from the north on the main track. Held, that plaintiff's failure to stop before driving on the track, under such circumstances, was contributory negligence as a matter of law."

In Smith's Adm'r v. Norfolk, etc., Ry. Co., supra, the court said: "A traveler on a highway must, before crossing a railroad, use his senses of sight and hearing, and his failure to do so is, as a general rule, negligence; and, since the track is a proclamation of danger to him, he must make the acts of looking and listening reasonably effective."

In the light of the principles settled by the decisions herein cited we are of opinion that plaintiff's driver was negligent in his approach to the crossing in question, so negligent and lacking in care as to preclude plaintiff's right to recover. But one other question remains. The plaintiff contends that defendant is responsible, in

any event, under the facts in this case because it had the last clear chance to prevent the collision, or at any rate the jury had a right to draw that conclusion from the testimony of the section man, Lee. Plaintiff claims that Lee could have drawn the attention of the driver to his danger and averted the collision. We cannot sustain this contention. The undisputed evidence shows that Lee was on the south track. When he first saw Hope he was 30 or 40 feet south of the main track driving his horses at a slow trot, and then they sprung and jumped right into the engine. After Lee saw the team it was clearly impossible for defendant to avoid the injury. It had no chance whatever to stop its train after discovering the team. The order granting the motion for judgment notwithstanding the verdict was clearly right and the judgment is affirmed.

All concur, except FISK, J., disqualified.