SAMUEL H. RAYMOND *vs.* BYRON E. ELDRED.

MARY C. WING *vs.* SAME.

Oxford.   Opinion February 15, 1928.

*Albert Beliveau,* for plaintiffs.
*Verrill, Hale, Booth & Ives,* for defendant.

Sitting: Wilson, C. J., Philbrook, Dunn, Barnes, Pattangall, JJ.

Pattangall, J. On motion. These actions, in which a jury awarded damages to the plaintiff Raymond for injuries to person and property, and to the plaintiff Wing for injuries to the person, grew out of an automobile collision occurring on the state highway between Rumford Falls and Dixfield, at a point approximately one mile south of Rumford Falls.

The plaintiffs were proceeding northerly from Dixfield, the plaintiff Raymond driving his car in which the plaintiff Wing was a passenger. The defendant, accompanied by his wife and secretary, was riding in the opposite direction. The highway at this point consisted of a sixteen-foot strip of macadam with a dirt shoulder on each side of approximately three feet, running close to the easterly bank of the Androscoggin River. Along this bank, which sloped off sharply to the river, was a railing, and on the opposite side of the road, a slight ditch beyond which a steep bank rose abruptly from the level of the road.

The automobiles collided at a point about ten feet from a pole numbered $\frac{91}{30}$, situated on the side of the road away from the river. Northerly of this pole there was a slight curve in the highway. The collision occurred on the easterly side of the highway, and the negligence complained of is that defendant's car was on his extreme left-hand side of the road at the time of the collision. This allegation is admittedly correct, and he was therefore guilty, prima facie, of negligence, but his explanation of the situation, if accepted as true, would relieve him of liability on that account. On the other hand, if the testimony of the plaintiffs is taken, defendant was negligent and his negligence was the cause of the accident.

The question involved are of fact, and ordinarily the jury findings would not be reviewed by this Court. In general, the rule is that when the testimony is conflicting the verdict must stand, but every case which results in a verdict by a jury must present some apparent conflict of testimony, and in order for a verdict to be sustained by this Court, there must be in support of it reasonable evidence sufficiently consistent with the circumstances and probabilities of the case to raise a fair presumption of its truth. *Rob-*

*erts* v. *Railroad,* 83 Me., 298; *Moulton* v. *Railway Company,* 99 Me., 509. If the verdict is clearly and manifestly against the evidence, it will be set aside. *Gilmore* v. *Bradford,* 82 Me., 547; *Cosgrove* v. *Kennebec Light & Heat Co.,* 98 Me., 473.

The testimony of interested parties, contrary to facts otherwise conclusively established and contrary to all reasonable inferences to be deduced from the situation disclosed by the evidence, does not raise a conflict even requiring a finding by the jury. *Moulton* v. *Railway Co.,* supra.

In the instant case, the defendant testified that, while driving at the rate of fifteen or twenty miles an hour on the right side of the road, as he approached the curve just beyond which the accident occurred, he saw the plaintiff's car on the river side of the highway, close up against the railing, moving very slowly. He noticed a man and a woman in the car, the woman leaning over toward the railing in front of the man. He sounded his horn and observed a motion of the hand on the part of the man, which he regarded as a signal to pass on the left, there being no room to pass on the right. He then ran directly diagonally across the road, and when he had reached about the middle of the road, plaintiff's automobile started ahead very slowly toward plaintiff's right. Defendant continued across the road, got as far out of the way as possible and stopped on the left-hand side close to the ditch, his car being parallel with the side lines of the road, with plaintiff's car thirty or forty feet distant, still on plaintiff's left-hand side of the road but coming diagonally toward defendant's car. These conditions obtained until plaintiff, still driving slowly, ran into defendant's car. Defendant says that at the time of the collision and just previous to it, plaintiff appeared to be panic-stricken and gave the impression of not having his car in control; that when the cars came together, plaintiff set fixedly in the same position in which he had been sitting and with the same apparent stare on his face that was noticeable prior to the collision. This testimony was corroborated by defendant's wife and secretary.

It appears that some three years before, the plaintiff Raymond had had an accident at the point where defendant says he first saw plaintiff's car, the accident consisting of running off the road and down the steep river bank; and it is agreed that he called his pas-

senger's attention to the fact of the accident and the place where it occurred, just before the collision. But, while Raymond admits that he did speak of this accident to Mrs. Wing and did (without removing his hand from the steering wheel) point toward the place of the accident, with his thumb, both he and Mrs. Wing say that this occurred when plaintiff's car was well over to the side of the road where the collision occurred; that they were on that side of the road all of the time and that the collision occurred by reason of the defendant, without any justifiable cause, leaving his right-hand side of the road at the point where the curve was most pronounced and driving across the highway, stopping only when the cars collided.

This testimony, on its face, seems to warrant the findings of the jury and in any event to raise a conflict so as to bring the case within the general rule governing the decision of questions of facts.

But, certain physical facts appear which are worthy of serious consideration, and about which there is no controversy. Before considering them, it may be recalled that defendant claims that prior to the collision he had brought his car to a stop, near the side of the highway and parallel to it. If this is so, plaintiff's version is incorrect. A stationary car cannot very well become the active factor in a collision, occurring in broad daylight, on a highway sixteen feet wide, with another car moving eight or ten miles an hour.

Plaintiff says that he was at no time on his left-hand side of the road. If this is so, there was no excuse for defendant driving over to his left. On the contrary, if it is not so, plaintiff's whole story is based on falsehood and unworthy of consideration.

The admitted facts, together with the physical evidence, become, therefore, of great importance and should be analyzed with care to determine, if possible, where the truth lies.

The position of the cars after the accident is of interest. Ordinarily, evidence of this nature is not of great importance because collisions usually occur between cars moving rapidly and the position in which each is found after the impact frequently has no bearing on their relative position at the time of accident.

But in this case, either both cars were moving very slowly or one was moving slowly and the other standing still at the moment of impact. Their position was not materially altered by the collision.

The right forward wheel of plaintiff's car was nearly at the edge of the macadam. Its left rear wheel was about a foot to the left of the centre of the highway. It stood at an angle of about thirty degrees as compared with the highway side line. Defendant's car was nearly parallel with this side line. Plaintiff claims that just previous to the accident he turned more to the right than he had previously been driving. Yet, when the accident occurred, his left rear wheel was left of the centre of the road by one foot and four inches according to the testimony of one of his witnesses who made actual measurements at the time. He claims that defendant's car collided with his while defendant was driving diagonally across the highway. Yet defendant's car was parallel with the highway at the time of collision.

Was plaintiff crossing the road from his left as defendant states, or, had he been on the right all of the time, as he says? Had defendant crossed the road and "straightened his car out" as he says, or was he crossing the highway diagonally as plaintiff claims? In view of the relative position of the cars after the accident, these questions can be answered in only one way and that sustaining defendant's contention.

Evidence was offered of tracks on the tarvia back of plaintiff's car indicating its course, but a brief study of that evidence clearly shows it to be of no value whatever.

Marks on the surface of the highway show clearly that the wheels of defendant's car were locked, by the application of the emergency brake, during the time in which it travelled thirty feet or more prior to reaching the point of contact corroborating his statement that he had brought his car to a stop before the collision occurred.

The damages sustained by the cars and the effect of the collision in throwing Mrs. Wing from plaintiff's car, in the manner in which she was thrown, tend to substantiate defendant's position.

All of the physical evidence weighs against the plaintiffs. A fair consideration of the oral testimony forces the conclusion that when plaintiff's car first came within defendant's range of vision,

it was on the side of the highway nearest to the river and almost if not quite stationary, Raymond being engaged in pointing out to Mrs. Wing the place of his former accident.

On this very important proposition, denied by Raymond and Mrs. Wing, the evidence is conclusive. Plaintiffs admitted that Raymond was pointing out the scene of his former accident to Mrs. Wing but, as has been stated, insisted that while doing so, they were driving on the side of the highway farthest away from the river, that they did not stop and that the pointing out of the place was done by a motion of Raymond's thumb, without his taking his hand from the steering wheel.

Raymond admitted, however, in cross examination, that immediately after the collision, defendant asked him what he meant by making a motion with his hand. Whether he, Raymond, did or not answer by saying that he was pointing out to Mrs. Wing where he went over the bank, he could not say.

He also admitted that in answer to a question put by the motor policeman, who arrived on the scene very shortly after the accident, he said that he made a motion.

The motor policeman testified that immediately after his arrival, Raymond told him that he was showing his niece where he went over the bank three years ago and suddenly looked up and saw defendant's car coming when he pulled over to the right-hand side of the road as far as he could go, until he was hit.

Defendant was a stranger to plaintiffs. He had no knowledge of the former accident. The facts concerning it were brought out by his informing the motor policeman with regard to the location of plaintiff's car when he first saw it, the position of the woman leaning across the man in order to look over the railing and the motion made by the man's hand.

If defendant invented these facts he managed, by chance, to invent a falsehood or a series of falsehoods absolutely consistent with admitted facts of which, at the time he told the story, he had no knowledge. If his testimony in these respects is untrue, he is not only a perjurer but gifted with second sight.

Raymond volunteered the information to the motor policeman that just before the collision he was pointing to the place where he went over the bank. If the pointing merely consisted of a mo-

tion of the thumb made while he had both hands on the steering wheel and while driving on the right-hand side of the road, the act of so pointing had no relation whatever to the accident and there was no reason to speak of it.

Confronted with this situation and asked why, under these circumstances, he gave that information to the officer, he answered "So that he would have something to work on."

Assuming plaintiff's car to have been nearly stationary and close to the railing, defendant was justified in turning to his left and if, after he had so turned, plaintiff started to go ahead, in a more or less uncertain and vacillating manner, it is difficult to think of any course which defendant could more wisely pursue than to drive his car to the side of the highway, even though it was the wrong side, and stop, which is what he very evidently did do.

We are strengthened in this view of the matter by the fact that the plaintiff Raymond's testimony was contradictory to that given by him in a former trial of the case and that he frequently contradicted himself in his testimony in this case. Both his testimony and that of Mrs. Wing with regard to the injuries sustained by them, and Mrs. Wing's testimony concerning her medical treatment are so exaggerated that confidence is not inspired in the accuracy of their statements concerning other features of the case.

On the whole evidence, defendant clearly appears to have exercised ordinary care and the collision must be attributed to negligence on the part of the plaintiff Raymond.

The jury apparently erred. There were features of the case which may well have excited their sympathy and prejudice. Raymond was a local laboring man, Mrs. Wing a working woman. Defendant was a summer visitor and a stranger to this locality. Plaintiffs had both suffered some injury. Defendant had escaped with no more than a slight property damage. It appeared in evidence, inadvertently to be sure, but still a part of the testimony which the jury heard, that defendant was protected by insurance.

The jurors not only resolved all doubts in favor of plaintiffs but failed to analyze the evidence sufficiently to see that plaintiffs' story of the happening could not be correct. Their indiscriminating generosity overcame their judgment. To permit the verdict

18

to stand, on the record before us, would be to endorse and perpetuate their error.

*Motions sustained.*
*New Trials Granted.*