PHILIP J. SPANG, JR.

*vs.*

ROBERT COTE AND LOUIS DAIGLE

York.    Opinion, October 18, 1949.

*Robert A. Wilson, I. Edward Cohen,* for plaintiff.

*John M. Curley,* for defendant Cote.

*Verrill, Dana, Walker, Philbrick, Whitehouse,*
*Leon V. Walker,*
*Leon V. Walker, Jr.,* for defendant Daigle.

SITTING: MURCHIE, C. J., FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J.   This case is before the Law Court on general motion for new trial filed by each of two defendants after jury verdict for the plaintiff in Superior Court for York County.

This is an action for negligence and, while the witnesses differ in some details, the principal facts appear to be as follows: On August 20, 1948 at about 8:30 P. M., the plaintiff, Philip Spang, Jr., was driving a Ford sedan in an easterly direction on "Guinea Road" in Biddeford.   The defendant, Robert Cote, in a Farmall Tractor with trailer loaded with hay, was ahead of the plaintiff and headed in the same easterly direction as was the plaintiff, but Cote had stopped or parked, because of tire difficulty, on the righthand side of the tar surface.   The defendant Cote did not attempt to drive off the road into a driveway, or onto the shoulder of the road.   The Cote tractor and trailer of hay were not disabled but a trailer tire was rubbing.   The defendant, Louis Daigle, in a Chevrolet sedan that was headed in a westerly, or opposite direction, had come along the highway and had stopped to speak to the defendant Cote, who was on the tractor.

The official hour of sunset on this day was stipulated to be 7:37 P. M.   The collision was about an hour later. There were no lights or reflectors on the rear of the load of hay. Exactly where the defendant Daigle was with his Chevrolet at the instant of collision, is in dispute.   In any event, Daigle, with his lights on and facing toward the on-coming

plaintiff, had stopped to talk with Cote and had been blocking the road just prior to the collision of the plaintiff's car with the trailer of hay.

The plaintiff Spang, going easterly toward the load of hay at a speed, as he says, of forty miles an hour, claims that he saw the lights of the Daigle car when about 800 feet away and thought that they were on a vehicle approaching him and intending to meet and pass him. The plaintiff saw no hay load. Plaintiff Spang says he dimmed the lights of his car and, when he found that the Daigle car (approaching him as he thought) did not respond by dimming, he put his lights on bright and dimmed them again. Spang says he was not then sure that this Daigle car was moving and approaching him, so he says he reduced his speed. Spang says that he was not "blinded" by the Daigle car's lights, but his vision was "reduced" thereby. He testified that he continued on and, when he thought he was about to pass the Daigle Chevrolet, suddenly saw the rear of the load of hay directly in his path and twenty-five feet away. At the time he saw the hay the plaintiff says he was driving "probably thirty miles an hour; maybe between twenty-five or thirty. I wouldn't really know." The plaintiff was, therefore, travelling about 40 feet a second, on his own estimate. Witnesses who saw the accident estimate the speed much greater, and state that the plaintiff did not reduce his speed.

The impact of the plaintiff's Ford pushed the parked tractor and trailer, which weighed five or six tons, more than ten feet. Large heavy posts, tongue bolt, trailer bracket, and other parts of the trailer and tractor were broken. The plaintiff said his car was "just junk" and worth fifteen dollars after the collision. It was stated, without contradiction, that the seat cushion of the rear seat of the plaintiff's car was thrown to the front and on top of the plaintiff's head, so that the cushion had to be removed before the plaintiff could be extricated from the front seat by bystanders.

The plaintiff testified that he could not have gone on the left side of the hay had he seen the hay, because it seemed to him that the road on his left was blocked by the Daigle car. The defendant Daigle and all the witnesses deny this, and say that Daigle had slowed up, or stopped for an instant to speak to defendant Cote, and that he (Daigle) was not beside the tractor and the hay. He moved ahead out of the road onto the adjoining lawn or driveway to permit the plaintiff's car that he saw fast approaching him to pass the load of hay. The defendant Daigle further testified that the plaintiff did not reduce his speed; that he got out of his car and tried to stop the plaintiff, and that the plaintiff passed by him without reducing speed while the Daigle car was off the road.

There was an electric street light on a pole near the road and over the point where the load of hay was stopped. Three rural mail boxes on a post were beside the pole, and the defendant Cote testified that his hay touched the boxes. One witness said that the load of hay was "under the light." The same witness also said there was room for a car to pass between the load of hay and the Daigle car. Another witness stated that at the time of the accident the Daigle car was not *wholly* off the tarred surface because the front left wheel of the Daigle car was "six to ten inches" on the tar.

We have, therefore, this picture: The plaintiff was approaching the rear of defendant Cote's load of hay, which load was then stopped on the right-hand side of the highway. Facing the plaintiff and by the side of the Cote tractor and trailer of hay, and blocking plaintiff's left side of the road (as the plaintiff says), or not blocking and off the road (as defendants and the other witnesses say), was the car of defendant Daigle with its lights shining toward the on-coming plaintiff. The plaintiff says that he did not see the hay load until it was too late to avoid hitting it, because his vision was "reduced" by the lights.

Four witnesses testified as to visibility of the load of hay, although what others saw is not material. The question is: Should the plaintiff have seen, and should the plaintiff have stopped or otherwise avoided the load of hay, or did some negligence on his part contribute to his injury? Had the jury the right to say, under the evidence, that the plaintiff was exercising proper care while either or both of the two defendants were negligent? Or was the verdict clearly wrong, as claimed by the motions of the defendants?

Every witness, except the plaintiff, testified that Daigle moved off the highway when the plaintiff was a long distance away. The plaintiff himself stated that the Daigle car did not move while he (the plaintiff) was travelling the last 300 or 400 feet. The plaintiff's first impression, when he was 800 feet away, he says, was that the Daigle car was "approaching." The plaintiff says he dimmed his lights and Daigle did not. The plaintiff says he fully realized that Daigle was not moving when plaintiff was 300 or 400 feet distant. The plaintiff, therefore, on his own testimony, knew that Daigle was stopped, and that his own vision was "reduced." He did not see what was the reason for the unusual action of the Daigle car, if it was unusual, or what was ahead in his own path as he was about to pass the Daigle car. He says he did not see the hay load until 25 feet away from it, although his lights were in "good condition." At the speed he was then travelling, "probably thirty miles an hour; maybe between twenty-five or thirty miles. I wouldn't really know," he was not able to control his car to avoid the collision with it.

The estimate of speed made by the plaintiff cannot be other than erroneous when the physical effects of the crash are taken into consideration. *Esponette* v. *Wiseman*, 130 Me. 297; 155 A. 650. There is also a tendency for drivers of automobiles to have their cars going much more slowly, on the court room witness stand, than they actually travel upon the highway.

It is the duty of an automobile driver to stop his car when for any reason he cannot see where he is going. *Haskell* v. *Herbert,* 142 Me. 133; 48 Atl. (2nd) 637; *House* v. *Ryder,* 129 Me. 135; 150 A. 487; *Cole* v. *Wilson,* 127 Me. 316; 143 A. 178; *Day* v. *Cunningham,* 125 Me. 328; 133 A. 855; 47 A. L. R. 1229.

Automobiles must be equipped with front lamps capable of rendering any substantial object clearly discernible at least 200 feet ahead. R. S. (1944), Chap. 19, Sec. 34; *Witherly* v. *Bangor and Aroostook Railroad Co.,* 131 Me. 4; 158 A. 362.

The automobile driver must drive at such a speed that he can bring his car to a stop within the distance illumined by his headlights. *Baker* v. *McGary Transportation Co.,* 140 Me. 190; 36 A. (2nd) 6; 5 Am. Jur. 647 "Automobiles", Section 263; *Barker* v. *Perry,* 136 Me. 510; 2 A. (2nd) 625.

An automobile driver is "bound to use his eyes, bound to see seasonably that which is open and apparent." *Callahan* v. *Bridges Sons, Inc.,* 128 Me. 346; 147 A. 423, 424; *Rouse* v. *Scott,* 132 Me. 22, 24; 164 A. 872.

It is not a question of which person is the more negligent. The burden is upon the plaintiff to show that no lack of care on his part contributed to his injuries, and a jury has no right to so "guess" or "suppose." He must "establish" that he was exercising due care. *Baker* v. *McGary Transportation Co.,* 140 Me. 190; 36 A. (2nd) 6. The evidence must be such as would authorize the jury to find that the damage was occasioned solely by the negligence of the defendant. *Witherly* v. *Bangor and Aroostook Railroad Co.,* 131 Me. 4, 7; 158 A. 362.

The evidence here is to be viewed in the light most favorable to the plaintiff, *Daughraty* v. *Tebbetts,* 122 Me. 397; 120 A. 354; 34 A. L. R. 1507, and the general rule is that when the testimony is conflicting the verdict will stand. *Moulton* v. *Railway Co.,* 99 Me. 508, 509; 59 A. 1023. There

must be, however, sufficient reasonable and credible evidence, consistent with the circumstances, to be the basis for the judgment of the jury. *Raymond* v. *Eldred*, 127 Me. 11; 140 A. 608; *Pollard* v. *Grand Trunk Ry.*, 62 Me. 93. Sympathy must not sway judgment. *Morin* v. *Carney*, 132 Me. 25, 29; 165 A. 166. "A verdict of a jury on matters of fact and within their exclusive province, cannot be the basis of a judgment where there is no evidence to support it, or when they have made inferences contrary to all reason and logic." Emery J., in *Day* v. *Railroad*, 96 Me. 207, 216; 52 A. 771, 773; 90 Am. St. Rep. 335.

The question for decision is, whether the verdict for the plaintiff is manifestly wrong. *Barlow* v. *Lowery*, 143 Me. 214; 59 Atl. (2nd) 702.

The court does not say that the finding of negligence, by the jury, on the part of the defendants is manifestly wrong, but it must say that because of the plaintiff's negligence the verdict is plainly wrong. The record impels us to this decision, for the contributing factor of the plaintiff's own lack of care makes this conclusion unavoidable.

The plaintiff failed to see and failed to avoid hitting the load of hay directly in his path. His automobile lights were good. He was not blinded by lights. He says he could see the road ahead, although his vision was "reduced." Whatever his speed, it was much too great to stop, or to avoid the load, when he suddenly saw it 25 feet away. The plaintiff so testified.

The plaintiff could either see, or he could not see, where he was going. If he could not see, it was his duty, under the law, to bring his car to a stop. It is not a question of whether he could see at all, but whether he could see where he was going and whether or not there was a substantial object or obstruction ahead. If, as he stated, he could see, the failure to see in time what should have been seen, is negligence. If there was a reduction of vision it added the

necessity for increase of care. An automobile driver is safe from danger only when he is on guard when he is safe. In the words of Benjamin Franklin, "Want of care does us more harm than want of knowledge."

In any event, and under any view of the evidence, it is clear that the plaintiff was either inattentive and anxious only to pass a car, or else he was driving at such an excessive speed that he could not stop within his range of vision. He either failed to see what he should have seen had he been paying necessary attention to the road ahead, or he exceeded the speed at which he could stop within range of his lights. In either event he was so clearly negligent, and his negligence so contributed to his own injuries, that the jury verdict in his favor was clearly wrong. *Baker* v. *McGary Transportation Co.,* 140 Me. 190; 36 A. (2nd) 6; *Barker* v. *Perry,* 136 Me. 510; 2 A. (2nd) 625; *Callahan* v. *Bridges Sons, Inc.,* 128 Me. 346; 147 A. 423; *Rouse* v. *Scott,* 132 Me. 22; 164 A. 872.

Every practicing attorney well knows that when a case is submitted to a jury where bodily injuries have been sustained by a plaintiff, sympathy will often outweigh good judgment. If a jury believes a defendant to have been negligent, it will sometimes fail to consider that the plaintiff's thoughtless neglect, or inattention may, in fact, have been the proximate cause of the disaster. The plaintiff may have "taken a reckless chance" but, in the mind of the jury, he should be recompensed for his suffering. Legal justice, as an abstract proposition and under calm conditions, might be easily seen by any juror, and mentally observed. When justice, however, becomes the concrete example to be decided under and according to the law, and the necessity for decision is immediate, a sympathy (or perhaps a prejudice) may throw the scales out of true balance. Juries have been known to decide cases according to the popular demand, and deliberately to leave correction of their errors, if any, to the court. Often too, the suspicion

of the jury that an insurance company is involved, will affect, if not decide, the facts on trial. A sympathetic nature is not a fault. Sympathy is a noble virtue, but sympathy must not so blind the one who is to decide a factual or legal problem that he does not wish or intend to follow the rules of law. The law must control. Otherwise, the law will neither be respected nor obeyed, and each case will be "a law unto itself."

This court, as all courts, is not devoid of sympathy and has given the record in this case most careful consideration. We regret that we must so decide, but it is the unanimous opinion that the entry should be

*Motions for new trial sustained.*

*New trial granted.*