## FREDERICK W. STONE v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, John Kurth, and A. Gaskill.

(151 N. W. 36.)

**Contributory negligence — question for jury — damages — train — speed of — estimate — foundation laid for testimony.**

1. Appeal from a judgment of $5,268, damages and costs, a recovery for personal injuries to plaintiff arising out of a collision of an automobile driven by plaintiff and a passenger train of the defendant company operated by codefendants' employees. Defendants contend that plaintiff was guilty of contributory negligence precluding his recovery, in failing to observe the oncoming train and avoid collision, under the proof that he had opportunity to observe the train while he was yet from 23 to 27 feet from the track and approaching it. The jury may have found from the evidence that freight cars on two of the four tracks at the crossing on Third street in Bismarck at the time obstructed plaintiff's view of the main line track in the direction from which the train was approaching; a 20-mile per hour wind was blowing, carrying the roar of the train away from plaintiff; the day and the crossing were dusty; the train was running at a speed of 30 miles per hour to within 60 or 90 feet of the crossing, when the emergency brakes were applied. *Held:* Under all the circumstances the question of contributory negligence was for the jury, and plaintiff is not guilty of contributory negligence as a matter of law.

**Speed ordinance of city — place of accident — foundation for admission in evidence.**

2. Sufficient foundation was laid in the testimony of witness Davies to permit of his estimate of the speed of the train at the time of the collision.

3. It was not error to admit in evidence a speed ordinance of the city of Bismarck, as sufficient foundation had been laid.

**Photographs of portion of the crossing — offered in evidence — refused to receive not error.**

4. It was not error to deny admission in evidence of a photograph of a portion only of the crossing, taken from some distance to the side of the main line track, and perhaps a misleading view of the situation.

Opinion filed January 29, 1915. Rehearing denied February 10, 1915.

From a judgment of the District Court of Burleigh County, *Nuessle,* J., defendants appeal.

Affirmed.

*Watson & Young* and *E. T. Conmy,* for appellants.

The estimate as to the speed of a train by a witness who had a mere glimpse of it from the side for a few seconds, is not sufficient to carry to the jury the question of the negligence of the railroad company with respect to its speed. Davis v. Chicago, R. I. & P. R. Co. 16 L.R.A. (N.S.) 424, 88 C. C. A. 488, 159 Fed. 10; Hoppe v. Chicago, M. & St. P. R. Co. 61 Wis. 357, 21 N. W. 227; Mott v. Detroit, G. H. & M. R. Co. 120 Mich. 127, 79 N. W. 3; Com. v. Sturtivant, 117 Mass. 122, 19 Am. Rep. 401.

In offering a city ordinance in evidence, it is necessary to prove its passage and to show that it is still in effect. Without such proof its admission was prejudicial to defendants. Picton v. Fargo, 10 N. D. 469, 88 N. W. 90; O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434; Larkin v. Burlington, C. R. & N. R. Co. 85 Iowa, 492, 52 N. W. 480, 11 Am. Neg. Cas. 514.

The photograph offered in evidence showed that part of the crossing where the accident occurred, and it was very material to show the view of the crossing which the approaching engineer had; it went to the question of negligence, and it was error to exclude it. Sherlock v. Minneapolis, St. P. & S. Ste. M. R. Co. 24 N. D. 40, 138 N. W. 976; Jones, Ev. 2d ed. § 411.

The undisputed evidence shows that plaintiff was guilty of contributory negligence in that, at a point some 25 feet from the track, he had a clear view of the approaching train. At a place and a time of safety he could have clearly seen the approaching train, and could have stopped and avoided the injury. 1 Moore, Facts, p. 293; West v. Northern

P. R. Co. 13 N. D. 221, 100 N. W. 254; Hope v. Great Northern R. Co. 19 N. D. 438, 122 N. W. 997; Sherlock v. Minneapolis, St. P. & S. Ste. M. R. Co. 24 N. D. 40, 138 N. W. 976; 3 Elliott, Railroads, § 1165; New York C. & H. R. R. Co. v. Maidment, 21 L.R.A.(N.S.) 794, 93 C. C. A. 413, 168 Fed. 22; Brommer v. Pennsylvania R. Co. 29 L.R.A.(N.S.) 924, 103 C. C. A. 135, 179 Fed. 577.

Plaintiff's failure to use his sight and hearing, and to use due care to prevent the accident, precludes a recovery.    Northern P. R. Co. v. Freeman, 174 U. S. 379, 43 L. ed. 1014, 19 Sup. Ct. Rep. 763; Colorado & S. R. Co. v. Thomas, 33 Colo. 517, 70 L.R.A. 681, 81 Pac. 801, 3 Ann. Cas. 700, 18 Am. Neg. Rep. 316; Schmidt v. Great Northern R. Co. 83 Minn. 105, 85 N. W. 936; Burns v. Louisville & N. R. Co. 136 Ala. 522, 33 So. 891; Omaha & R. Valley R. Co. v. Talbot, 48 Neb. 627, 67 N. W. 599; Guthrie v. Missouri P. R. Co. 51 Neb. 746, 71 N. W. 722; Chicago, I. & L. R. Co. v. Reed, 29 Ind. App. 94, 63 N. E. 878; Bush v. Union P. R. Co. 62 Kan. 709, 64 Pac. 624; Miller v. Louisville, N. A. & C. R. Co. 128 Ind. 97, 25 Am. St. Rep. 416, 27 N. E. 339; Aurelius v. Lake Erie & W. R. Co. 19 Ind. App. 584, 49 N. E. 857; Mann v. Belt R. & Stock Yard Co. 128 Ind. 138, 26 N. E. 819, 11 Am. Neg. Cas. 466; Galveston, H. & S. A. R. Co. v. Kutac, 72 Tex. 643, 11 S. W. 127; Hajsek v. Chicago, B. & Q. R. Co. 5 Neb. (Unof.) 67, 97 N. W. 329.

Plaintiff was also guilty of such negligence as to prevent a recovery, because of the careless manner in which he approached the crossing and the speed at which he was running his automobile.   West v. Northern P. R. Co. 13 N. D. 221, 100 N. W. 254; Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 535; Hope v. Great Northern R. Co. 19 N. D. 438, 122 N. W. 997; 3 Elliott, Railroads, § 1167; Chicago, M. & St. P. R. Co. v. Bennett, 104 C. C. A. 309, 181 Fed. 799; 1 Moore, Facts, p. 258; Davis v. Chicago, R. I. & P. R. Co. 16 L.R.A.(N.S.) 424, 88 C. C. A. 488, 159 Fed. 10.

Where a person of good eyesight, in attempting to cross a railway, was struck by an approaching train which was plainly visible from the point where it became his duty to stop, look, and listen for trains, it is presumed that he failed to do so, and this constitutes contributory negligence.   Kelsay v. Missouri P. R. Co. 129 Mo. 362, 30 S. W. 339; 1 Moore, Facts, p. 254.

Courts cannot interfere with verdicts based on conflicting evidence, where there is substantial evidence in the record to support the finding of the jury. But where the verdict is clearly against the truth and the undoubted weight of the evidence submitted, they should not hesitate to set aside such a verdict. Fuller v. Northern P. Elevator Co. 2 N. D. 220, 50 N. W. 359.

"It will be presumed that deceased actually saw and heard what he could have seen and heard if he had looked and listened before attempting to cross the track." Malott v. Hawkins, 159 Ind. 127, 63 N. E. 308; Garlech v. Northern P. R. Co. 67 C. C. A. 237, 131 Fed. 837; Philadelphia, W. & B. R. Co. v. Hogeland, 66 Md. 149, 59 Am. Rep. 159, 7 Atl. 105; Shufelt v. Flint & P. M. R. Co. 96 Mich. 327, 55 N. W. 1013; Stepp v. Chicago, R. I. & P. R. Co. 85 Mo. 235; Chicago, B. & Q. R. Co. v. Munger, 94 C. C. A. 176, 168 Fed. 692; Davis v. Chicago, R. I. & P. R. Co. 16 L.R.A.(N.S.) 428, 88 C. C. A. 488, 159 Fed. 10; Colorado & S. R. Co. v. Thomas, 33 Colo. 517, 70 L.R.A. 681, 81 Pac. 801, 3 Ann. Cas. 700, 18 Am. Neg. Rep. 316; Knopf v. Philadelphia, W. & B. R. Co. 2 Penn. (Del.) 392, 46 Atl. 747; Cincinnati, I. St. L. & C. R. Co. v. Grames, 8 Ind. App. 112, 34 N. E. 613, 37 N. E. 421; Keyley v. Central R. Co. 64 N. J. L. 355, 45 Atl. 811, 7 Am. Neg. Rep. 452; Carter v. Central Vermont R. Co. 72 Vt. 190, 47 Atl. 797.

*F. H. Register, George M. Register,* and *S. E. Ellsworth,* for respondent.

A well informed, intelligent person may testify as to the speed of a train, or may estimate or give his opinion on such question, where the facts are fully stated. Union P. R. Co. v. Ruzicka, 65 Neb. 621, 91 N. W. 543; Detroit & M. R. Co. v. Van Steinburg, 17 Mich. 99; Chicago, B. & Q. R. Co. v. Johnson, 103 Ill. 512; Pennsylvania Co. v. Conlan, 101 Ill. 93; Worthen v. Grand Trunk R. Co. 125 Mass. 99; Chicago, B. & Q. R. Co. v. Clark, 26 Neb. 645, 42 N. W. 703.

The city ordinance offered in evidence was issued in pamphlet or book form as the "Charter and Ordinances of the City of Bismarck." The book bore evidence that it was "ordered printed by the city council." It was produced and identified by the city auditor of Bismarck, the keeper of such books and city records. It was properly received in

evidence.    Compiled Laws 1913, § 3596; 17 Cyc. 298, and authorities cited; Whaley v. Vidal, 27 S. D. 627, 132 N. W. 247.

It is well settled that a motion by defendant to direct a verdict is a demurrer to the plaintiff's evidence, and the court, in considering such motion, is substituted for the jury as the judge of the facts, and everything which the jury might reasonably infer from the evidence is considered as admitted.    Bank of United States v. Smith, 11 Wheat. 171, 6 L. ed. 443; Cameron v. Great Northern R. Co. 8 N. D. 124, 77 N. W. 1016, 5 Am. Neg. Rep. 454; Pendroy v. Great Northern R. Co. 17 N. D. 443, 117 N. W. 531; Haugo v. Great Northern R. Co. 27 N. D. 268, 145 N. W. 1053.

A failure to stop, look, and listen for an approaching train will not be held as negligence, when the circumstances were such that an observance of these precautions would have been unavailing as a guard against injury.    Pendroy v. Great Northern R. Co. 17 N. D. 443, 117 N. W. 531; New York S. & W. R. Co. v. Moore, 45 C. C. A. 21, 105 Fed. 725; Union P. R. Co. v. Ruzicka, 65 Neb. 621, 91 N. W. 543; Hollinshead v. Minneapolis, St. P. & S. Ste. M. R. Co. 20 N. D. 642, 127 N. W. 993; Dusold v. Chicago G. W. R. Co. 162 Iowa, 441, 142 N. W. 213; Dougherty v. Chicago, M. & St. P. R. Co. 20 S. D. 46, 104 N. W. 673; Ernst v. Hudson River R. Co. 35 N. Y. 9, 90 Am. Dec. 761.

Where a person about to cross a railway is suddenly confronted with danger from an approaching train, he has very little time to collect his thoughts and decide what is the best course to pursue.    Beanstrom v. Northern P. R. Co. 46 Minn. 193, 48 N. W. 778; Hendrickson v. Great Northern R. Co. 49 Minn. 245, 16 L.R.A. 261, 32 Am. St. Rep. 540, 51 N. W. 1044.

A person, in driving an automobile, is not required to stop before crossing a railway, where such act would be futile to prevent injury. Walters v. Chicago, M. & P. S. R. Co. 47 Mont. 501, 46 L.R.A.(N.S.) 702, 133 Pac. 357.

Goss, J.    From a judgment of $5,268 damages and costs, as a recovery for personal injuries to plaintiff through their negligence, defendants appeal.    The usual averments of negligence are made with answer by denials and charges of contributory negligence.    The alleged

negligence pleaded in the complaint covers all negligence disclosed by the proof. Certain errors are also assigned on reception of testimony, over objection. But the principal question, as stated in appellant's brief, is that of contributory negligence is whether the uncontroverted and admitted facts established plaintiff's negligence *per se,* contributing to his injury.

The injury was received on May 4, 1911, in a crossing accident, where the railway tracks cross Third street within the city of Bismarck, and as plaintiff crossed tracks in an automobile. The train demolished the auto and hurled plaintiff a considerable distance, rendering him unconscious, fracturing his skull, and seriously injuring him. The verdict is not challenged as excessive. Instead the question is only that of liability.

Plaintiff had resided near Bismarck for eleven years. He was engaged in dairying. He was familiar with the crossing and the situation thereabouts as to obstructions to view and any possible danger likely to be encountered. He had owned his International automobile about a month, and understood its operation. About 2:30 o'clock that afternoon he crossed the railway tracks on Fifth street south to Front street, the first street running each and west south of the tracks, where he turned westward, and after going about a block stopped to allow a passenger to alight, after which he immediately continued on about a block further to the intersection of Third street with Front street. Here he turned on Third street going north and up a gradual incline, running in low gear. It is 170 feet from where he turned onto Third street to where the first of the four tracks of the defendant company was crossed, and after crossing which he continued on 40 feet further, when he was struck by the engine of a special passenger train running at right angles to Third street and the direction he was traveling. The accident occurred about 2:37 P. M. A strong 29 mile per hour wind was blowing from the southeast, carrying any sound that might have been made by the train away instead of toward plaintiff. Approximately a dozen bystanders saw the occurrence and have testified. Defendant's depot is situated a block and a half east of Third street crossing, the scene of the accident. The train was coming from the west. Estimates of its speed at Third street vary from 12 to 30 miles per hour. The Government Weather Bureau buildings, immediately ad-

joining and on the north of defendant company's main track, consist of a barn 400 feet west of Third street and a house 680 feet west of the same point. Estimates are that the train was making 30 miles per hour or more in passing these buildings. At the time in question a regular passenger train was about due or a little overdue, and plaintiff had knowledge that a passenger train was scheduled to be due from the west. He had no knowledge concerning the particular train of some eight or ten coaches which was not running on any regular schedule time, but on telegraphic order. It was not intended that the train would stop at Bismarck, unless on signal for orders.

The train was on the main line and on the north one of four tracks at Third street crossing. These tracks were 14 feet apart from center to center. According to the testimony offered by plaintiff, upon the two southermost tracks were freight cars extending into and upon the highway, and to within about 6 feet from the roadway where teams travel over the crossing. These freight cars were of sufficient heighth and width to entirely block off the view to the west and northwest, and to plaintiff's left as he came up the grade and until he crossed the second track, or approximately to that point, and within 24 feet of the south rail of the main track, upon which the collision happened. Immediately to the south of the tracks was situated the Marshall Oil warehouse, extending out approximately to the street line. West of this warehouse were two oil tanks 25 or 30 feet high, 50 feet from the railway tracks, and to the west of these tanks was another building. In the neighborhood of the tanks was also a loading platform 3 or 4 feet high. While testimony for the defendants, with a photograph in evidence, offered by them, is to the effect that only the second track from the south was occupied by cars and with the cars to the west of the street line of the crossing, yet there is testimony tending to establish that within fifteen or twenty minutes of the time of the accident, and before the picture was taken, a switch engine had removed the freight cars from where they had been immediately previous to the accident; and the presence of the switch engine in the immediate vicinity, and that it had moved over at least tracks number one and two at the crossing before the photograph was taken, is admitted. There is a conflict in the evidence on whether the position of the cars was changed before the photograph was taken. What is said hereafter will be upon the assump-

tion that such a change was made, as the jury must be assumed to have found in their finding for the plaintiff. Hence, immediately prior to this accident there were cars upon both tracks three and four, the two southermost tracks, and which were extending well out to within 6 feet of the road over which the automobile traveled, and which, together with the warehouse, loading platform, oil tanks, and raise of ground all taken together, wholly obstructed plaintiff's view to the northwest, and rendered it impossible for him to see any portion of the main line track number one, upon which the accident occurred, during that period of time within which he was traveling a distance of 75 feet on Front street before turning upon Third, and also while he was traveling uphill on Third street over 175 feet, until he crossed the track number three, occupied by freight cars, and 24 feet from the main line track. When he reached this point, 24 feet from the main track, had plaintiff immediately looked to the west, he could have seen the train, but he could not have seen it until then. It was approaching the crossing upon a slightly down grade, and, according to the train crew, steam had been cut off some little time before, and it was rolling without power applied. A strong wind was blowing from plaintiff toward the train, and the reasonable probabilities are that he could not have heard it coming. It was a dusty day and dusty at the crossing. As plaintiff ascended the hill, immediately upon reaching the top he was upon the southernmost track and then about 45 feet from the main line track. He looked eastward toward the depot when passing upon the track, and says he looked westward. Concerning this plaintiff testifies that he was running upon low speed, and about 5 miles per hour, with the auto operating well and under his full control, he having nothing to do but to steer it and keep a lookout.

The following questions were asked him:

Q. Now, as you passed on the track, did you look east and west?

A. Yes, sir; I did.

Q. See any train coming from the east?

A. No.

Q. Were you listening at that time for the approach of trains from either way?

A. Certainly was; yes.

Q. Did you hear the sounds of bells or whistle or roar of a train upon the track?

A. No.

Q. You heard nothing whatever?

A. Nothing at all until the last thing.

Q. As you passed the crossing upon the second track from the south and your auto pushed on toward the third track, did you see or hear a train?

A. Not until it was just about ready to hit me.

Q. And then did you see it?

A. Just an instant; yes.

Q. Was it approaching quickly at that time?

A. Came onto me just so quick (indicating),—all at once.

Q. Did you have time to stop or reverse the automobile?

A. No, sir; I should say not.

Q. After you pushed by these cars on the second track from the south, as they were then, what, if anything, do you remember?

A. Nothing more than seeing the train right onto me all to once; just a flash and that is all I can remember.

He testifies that he could have stopped his car, running on low speed at 5 miles an hour, in a foot and a half quite easily, and with the ordinary foot brake and without using the emergency brake, and that his machine was in first class condition in every respect at that time; that when running uphill he looked to the east, but could not see to the west; that he has traveled over this crossing probably once a month for years and knew it was a bad crossing; and that his automobile was making considerable noise in low speed with the cutout open. The proof shows that unquestionably during the instant preceding the collision the engineer gave an alarm whistle, at the same time throwing on the emergency air brakes, which did not operate instantaneously, but when in perfect order take an instant to apply the braking power.

The engineer testifies:

Q. When was it that you first noticed any automobile crossing that crossing on that day?

A. Why, just as I was approaching Third street crossing. Just

before I was approaching Third street crossing an automobile bobbed out from behind the cars, these ferry cars standing there, and bobbed right in front of me. Blowed the whistle and reached for the air at the same time to stop. Was looking straight ahead and that appeared to be bobbing right in front of me, probably in the neighborhood of 60 or 90 feet. Was running 12 miles an hour or such a matter. Ran three car lengths over the crossing before the train came to a complete stop.

The testimony offered by plaintiff was that the train was running at a much higher rate of speed and that the alarm whistle blew when it was within two or three hundred feet west of the crossing. Several eyewitnesses were watching the impending accident, expecting it, and one of them, witness Davies, an attorney, estimates the train's speed at .30 miles an hour at the time it whistled, the instant before the collision. He places the length of the train at ten or twelve coaches, and says the train had gone about by, "possibly a coach or two left." "It was a very long train. I should think there was ten or twelve coaches at least. Most of them went by" the crossing. Plaintiff was hurled 40 or 50 feet, and witness was one of the first to his assistance. This witness had observed the train approaching for half a mile, and as the probability arose that there would be a collision was in position to carefully observe all the attendant circumstances from about a block distant north and in plain view of the crossing. He drives a motorcycle, and to the usual extent is familiar with the speed of vehicles. Witness timed the occurrence as 2:37 P. M. Just before hitting the automobile the engine whistled two long and one short, "the Morse letter d." Witness "used to work in a railroad station as an operator helper." Another eyewitness, Evans, saw the occurrence; saw Stone approach the crossing from the south from the time that he was coming up the grade at the side of the track at about 5 miles an hour, and saw the train approaching from the west; that plaintiff "seemed to be looking right straight ahead and watching his machine while it was running. He was looking just like anybody would in driving a car, and looking where he was going; had his head straight up and looking forwards. The engineer didn't blow the whistle until it was very close to him." "Saw the engine strike the auto." Another eyewitness, Attorney

Dullam, sworn in defendants' behalf, saw the auto and train approach the point of collision, "saw the train come around the curve (800 feet west of the point of collision), and saw the automobile coming at the same time." "Could not tell where plaintiff was looking. It was over a block away; didn't see how he appeared. Just saw the man driving in the machine and turned up to the crossing." "As he came up the grade onto the track, his machine very nearly stopped just as he got on the level, then picked right up and increased speed until he was hit." Witness couldn't state as to whether plaintiff looked for the approaching train or not; "saw the train coming and saw him coming, and wondered if there would not be a collision, and watched them, but was straight in front of the train and couldn't tell how far the train was from the crossing." Another eyewitness, Clough, testifying in behalf of defendant, gave practically the same testimony, both placing the speed of the auto at 5 or 6 miles an hour. The ordinances of the city of Bismarck are in evidence, showing that the speed of the train, according to even defendants' witnesses, greatly exceeded the speed limit permitted at crossings.

There is much more similar and cumulative testimony. There was ample evidence from which it could have been found that the train was running at a high and dangerous rate of speed, 30 miles per hour, over the crossing. That the permitting of the freight cars to block off vision of the track and shorten about one half the usual distance within which, under ordinary conditions without the cars being where they were, plaintiff would have had to protect himself, constitutes, all taken together, an indisputable basis from which to conclude that the defendant company might have been found in the first instance guilty of negligence contributing to plaintiff's injury. The question then arises whether the plaintiff was guilty of contributory negligence resulting in his injury, and if so, of course, he cannot recover. As motions for directed verdict were made at the close of plaintiff's testimony and again at the close of the trial, and denied, and reviewed on motion for a new trial, the question is presented whether as a matter of law it should be said that plaintiff was guilty of such contributory negligence. Defendants contend that the same is established *per se.* The particular circumstances urged as sufficient to establish such negligence *per se* on plaintiff's part are that between 23 and 27 feet were traveled

by the auto beyond the point where the train was within his range of vision on his emerging from behind the box car on track number three in his progress toward the main line track number one, and Stone's testimony that at 6 miles an hour he could have stopped the automobile, under ordinary circumstances, within a foot and a half. Defendants assert that if plaintiff did not see the train and stop, it was his own fault, and that the law will not hear him say that he was not negligent, or entertain a contrary finding of a jury. When the time thus elapsing within which defendants would require plaintiff to so act is measured in seconds instead of distance traveled, the case assumes a closer aspect as to contributory negligence *per se*. At 6 miles per hour as the rate of speed of the automobile, and in accord with the weight of the testimony, plaintiff would be traveling $8\frac{8}{10}$ feet per second, and therefore within three seconds elapsed time, he would traverse the distance and be upon the railroad track, even taking defendants' own figures for the distance. And had he looked to his right and toward the depot at his point of emergence from behind the box car, and for which he could not be criticized, as he would be under obligation to look both ways, with his automobile traveling at this rate of speed, the distance between it and the track would be greatly reduced, and he might thus, though cautious and alert, be in such dangerous proximity before, after looking westward, he fully sensed his position, as to make the course of his probable conduct under such exacting circumstances, in the face of his great peril, problematical, instead of so clear and certain as to compel an inference that the results could undoubtedly have been avoided, equivalent to convicting plaintiff of contributory negligence *per se*. Add to this the high, dangerous rate of speed at which the train was negligently bearing down upon him, for him to comprehend which an instant must expire, and during which he may have hastily concluded that the exercise of due care and his extrication from danger demanded that he cross ahead of the oncoming train, calculating it as running much slower than it was, and the question becomes still more complicated and uncertain as to the question decisive of plaintiff's right of recovery, defendant's negligence being assumed. An added circumstance is the wind blowing at 29 miles per hour from plaintiff directly northwest, and the dust it probably would carry toward the train to obscure vision. Add to this the circumstances that the train was

running not under steam, and perhaps with but little smoke, with no bell ringing, or if ringing, unheard because of the violent wind blowing in the opposite direction, and with no whistle blown or heard until the instant before the accident, and the situation is complete as one that could have been found by the jury to have existed at the moment of and immediately prior to the occurrence. It is impossible to conclude that reasonable minds must agree that under these circumstances plaintiff must have been negligent in failing to avoid a collision. The situation is too close to the border line, and is too speculative as to what the reasonably prudent man would have done in plaintiff's situation, for the law to conclusively presume negligence on his part. Examination has been had of all the negligence cases ever decided by this court, and no parallel is found. The nearest is that of Pendroy v. Great Northern R. Co. 17 N. D. 433, 117 N. W. 531, under which, and in line with the weight of authority, plaintiff was not called upon to stop his automobile before going on the track, or be guilty of negligence *per se,* the circumstances here being similar to those there. Of course, a situation may arise in which an auto must be stopped or negligence be presumed, but it is not before us under these facts. Had the box cars not been where they were, or any greater distance been necessary to travel with the train within plaintiff's possible vision, the conclusion might be different. Nor can contributory negligence necessarily be measured by the distance to be so traveled. Cases may arise in which it may be negligence *per se* for an autoist to fail to stop within 20 feet of a crossing. The facts make the instant case a close one in law, when viewed in the light of the adjudicated cases. Defendants' contention is overruled.

Error is assigned in the reception of testimony of witness Davies wherein he estimated the speed of the train at 30 miles per hour at the time of the collision, over objection that he was not shown to have been qualified to so testify, and that his estimate is inadmissible as not based upon sufficient facts observed. In addition to what has already been stated in the recital of facts, it appears that this witness was observing the train while it was traveling at least half a mile, though part of the time his vision was obscured by obstructions, but the smoke of the train could be seen and the engine itself was in his plain view for three or four car lengths immediately before the collision. Of

course, the witness was watching both the train and the automobile. He was mentally calculating the probability of a collision and along with it the probable speed of the train, from when it first came into view until it struck the auto. To exclude the estimate of this eyewitness would likely announce a rule that would prevent the usual eyewitness from giving any estimate of speed. The foundation for this estimate was sufficient.

Error is assigned on the admission in evidence of a section of the revised ordinances of Bismarck, on the ground that no sufficient foundation was laid, in that the record does not show the existence or passage of the ordinance, and that there is no competent evidence showing that it is still in force. From the cases cited, it appears that counsel would contend that it was necessary to show the passage of the ordinance by yea and nay vote taken and recorded. The validity of the ordinance is not in issue, and the statute, § 3596, providing that "such book (of ordinances) or a certified copy of the ordinances so recorded shall be received as evidence in all courts and places without further proof," authorizes reception in evidence of particular ordinances so recorded. It appears that the city auditor, custodian of the city ordinances, was sworn, produced the book of ordinances, one of which was the particular ordinance in question, and testified that the same had not been repealed or amended since its passage. Thereupon the particular section was received in evidence over the objection that no foundation was laid. The objection is without merit. Whaley v. Vidal, 27 S. D. 627, 132 N. W. 242–247; 17 Cyc. 298.

The court excluded a photograph of the crossing upon defendants' offer. It was taken to show a view looking "in the direction that the engineer would look coming towards the east," but it was taken from a position 10 feet north of the main line, and but 25 or 30 feet west of the crossing, and from but a man's height above the ground. But in the offer counsel states that "it is not offered especially to prove or tending to prove what the engineer riding on the train could see." It was excluded, on objection, and when reoffered as showing the engineer's view of the situation, it was again excluded. Admittedly the exhibit was so taken as not to include the cars on side track, and to give but a partial, and perhaps misleading, view of the situation, and it could not have illustrated the engineer's view, it not

including the cars on the side tracks and having been taken from a point 10 feet north of the track and at a different angle and heighth from any view that could have been had by the engineer. While the ruling was more or less discretionary, it is apparent that it was offered with some motive other than that disclosed by the contradictory offers made. While caution should be exercised in excluding views of situations in controversy, no error was committed in its exclusion. After a careful review of all the evidence under the assignments urged, the judgment is affirmed.

## On Petition for Rehearing.

Goss, J.  Defendants petition for rehearing and state that we have overlooked an assignment of error taken in their brief in the following language: "The undisputed testimony shows that plaintiff was guilty of contributory negligence in that knowing the crossing he travelled up to it at a speed of five miles an hour or more and for a distance of from two hundred seventy-five to five hundred feet with both his sense of sight and sound obstructed and interfered with." This was thought to have been sufficiently discussed wherein the whole general situation was treated. As this necessarily included the approach to the danger area, which began at the point of emergence from behind the box cars obstructing vision to the northwest and twenty-three to twenty-seven feet from the main line track, it was inferentially covered in the main opinion. As counsel is insistent, however, it may be stated that it is difficult to conceive how as a matter of law plaintiff could be held to be guilty of contributory negligence at this point of entrance into the danger zone when he was then traveling but five or six miles per hour and in control of his machine and able to stop within a foot and a half from where the brakes might be applied. This is the testimony and the jury had a right to believe it. On this assumption plaintiff could have stopped as quickly as a pedestrian if emerging from behind the box car. It is evidence that whatever basis there is upon which to charge plaintiff with contributory negligence that charge must be placed upon the failure of plaintiff to observe the oncoming train or hear it during his entire approach and particularly from where the scope of his vision would have permitted and not in his advance merely to the edge of what has been termed the danger zone.

Defendants declare this case to be controlled by Hope v. Great Northern R. Co. 19 N. D. 438, 122 N. W. 997; Christopherson v. Minneapolis, St. P. & S. Ste. M. R. Co. 28 N. D. 128, L.R.A.1915A, 761, 147 N. W. 791, and Gast v. Northern P. R. Co. 28 N. D. 118, 147 N. W. 793. The facts in these cases discriminates them from this. In Hope v. Great Northern R. Co. the statement of facts is quoted as follows: "The main railroad track is the most northerly of three parallel tracks. South of it and about ten feet distant is a passing track and south of this passing track and about twenty-two feet distant from it is the elevator or side track. . . . Both the passing track and the side track were well filled with freight cars on both sides of the crossing." Thus the opening between the cars through which the highway ran, opened immediately upon the main track. The passing track which was covered with cars on both sides obscuring vision, was but ten feet from the main track. The situation was such that plaintiff's team was upon the main track at the instant when the driver's range of vision would open to enable him to see the oncoming train or for any distance to either side of him. He exercised no care whatever under this situation demanding it but on the contrary he recklessly drove his team on a trot or gallop over the crossing where the accident occurred. That situation was worse than this one in the instant case would have been had the passing track in addition to the third and fourth tracks also been covered with freight cars, which would have left but about fourteen feet to travel to reach the main line and within which distance only plaintiff could have seen the approach of the train. Counsel could then have more strongly contended that to approach such crossing at even six miles an hour would have been contributory negligence *per se.*

Perusal of Christopherson v. Minneapolis, St. P. & S. Ste. M. R. Co. shows an entirely different situation to this one. That crossing was an extremely dangerous one, almost a veritable man trap, and known to be such, and necessarily so by the contour of the surrounding country. Likewise, in Gast v. Northern P. R. Co. the facts disclose that the driver of a four horse team, one team ahead of the other, drove over a crossing between cars obscuring his vision on either side, under circumstances in which the lead team must have been very close to or almost upon the main line track at the instant when plaintiff, the

driver, emerged from between or behind the box cars and was enabled for the first time to see any approaching train. No such situation is here disclosed.

It may well be said, as intimated in the main opinion, that the facts in this case present a close issue of law on whether plaintiff should be charged with contributory negligence as a matter of law. Doubt must be resolved in favor of the plaintiff and in favor of the findings of the jury by their verdict. It may be added that this case marks about the limit at which negligence should not be imputed to a plaintiff under circumstances. Another assignment on admission of testimony as to train's speed not particularly ruled upon and re-urged on petition for rehearing, we held not well taken. The petition is denied.