## MAUD E. FISH *vs.* RALPH A. NORTON.

Washington.    Opinion September 24, 1928.

*Hubert E. Saunders*, for plaintiff.
*Oscar J. Dunbar, Herbert J. Dudley*, for defendant.

SITTING: PHILBROOK, DUNN, DEASY, BARNES, PATTANGALL, JJ.

DUNN, J.    In this civil action for damages from an assault with intent to ravish, the plaintiff has the verdict, and defendant urges his general motion for a new trial.

There are two counts in the declaration in the writ. The first

alleges the trespass on the twenty-third day of May, 1927; the second, on the second day of May, 1927, and "continually there-afterwards on each and every day until the twenty-third day" of the same May.

Numerous executed individual assaults are laid by the declaration; one on May 23, 1927. In the next count plaintiff charges, in effect, that the defendant committed different assaults on the different days from and including the second day of May until the twenty-third day of that month, i.e., exclusive of the day last mentioned and inclusive of the day immediately before.

Taken inversely, the counts in the declaration set out the contentions of the plaintiff according to the order of time.

The plea is the general issue. The verdict is general with an award of damages in the sum of $1683.50.

Plaintiff is thirty-four years of age. She lives in a house twenty feet back from a principal street in the village of Columbia Falls. Defendant is fifty years old.

At five different times, all in May, 1927, and prior to the twenty-third day, on the testimony of the plaintiff, the defendant proposed that there be liaison between them. The first two proposals were in the defendant's store, the next two in the plaintiff's house, and, of the five, the last was in her dooryard.

Concerning the third proposal — the first in the house of the plaintiff — and concerning it alone, is there testimony of an overt act; the act testified to being injuries to an arm and side. Little is necessary to be said of the testimony, given solely by the plaintiff, tending to support this single instance of the many which the count alleges. If the jury gave full credence and weight to the testimony, then the testimony does not reasonably justify the award of damages, even conceding punitive damages justifiable.

As the record is, it seems consistent to recite, for the background it may afford the whole situation, that the first two proposals were received by the plaintiff in silent indifference. In declining that at the house, in connection with which proposal the physical injuries are sworn to have been done, plaintiff witnessed that she stated that her husband would be "in soon." On the occasion of the next proposal, she told the defendant that her husband was in the barn, and, on the occasion of the last of the five, she

pointed to her husband in a field across the street, where he was plowing.

On May 23, 1927, between three and four o'clock in the afternoon, so the testimony of the plaintiff continues, when only she and her three-year-old child were in the house, defendant came there; on being told that the husband was not at home, defendant seized plaintiff by the arms, pushed her against the couch, opened his clothing, placed her on the couch, disarranged her clothing, "and got on top of me"; not however to the accomplishment of purpose, because of the opportune arrival of plaintiff's husband.

There is not in the evidence of the plaintiff the suggestion of effort at resistance, unless by implication from the use of the word "pushed." There is no mention of any outcry, till she was lying on the couch, with the defendant over her, when, plaintiff's version is, she screamed: "What do you think I am? Get out of here!" Just that, and nothing more. The plaintiff's husband was then in the kitchen — the room next to that in which the plaintiff was.

A verdict on a properly submitted issue should not be lightly set aside. *Sanford* v. *Kimball*, 106 Maine, 355. The case must be clear to vacate a jury verdict. But the constitutional assurance of trial by jury would lack in its guarantee were there not an authority, in a judge or in a bench of judges, to be exercised with caution and yet without uncertainty, to overturn a verdict (except on acquittal of a criminal charge), if the verdict be contrary to law or against evidence. *Capital Traction Co.* v. *Hoff*, 174 U. S., 1, 43 Law Ed., 873.

It is out of the question to lay down a hard and fast rule by which to determine whether a verdict should be set aside as against the evidence. The general rule is that if the verdict is so manifestly, palpably, glaringly against the evidence in the particular case as plainly to denote that the jury misunderstood the testimony, upon a material issue, necessarily relied upon, or that the jury disregarded such testimony, or where there is ground for the suspicion that prejudice, passion, or some improper motive influenced the conclusion of the panel, or where the surrounding circumstances make the testimony of a witness, as to matters validly admissible to prove one side or the other of the issue, and accepted for that purpose, of such great improbability as to merit but dis-

approval, a new trial may and ought to be granted. *Googins* v. *Gilmore*, 47 Maine, 9; *Butler* v. *Rockland, etc., Railway*, 99 Maine, 149, 153; *Jacobs* v. *Bangor*, 16 Maine, 187; *Phillips* v. *Laughlin*, 99 Maine, 26; *Blumenthal* v. *Boston & Maine Railroad*, 97 Maine, 255, 261; *Garmong* v. *Henderson*, 114 Maine, 75. Believability and credibility may be strained till they snap.

The story by this plaintiff, not yet herein fully told, is so contrary to probabilities, so inconsistent with circumstances, so unreasonable, that justice requires that it be disregarded.

Five times already, so the case shows, had there been made known to the plaintiff by this defendant, his sensual desire. She heard the defendant when he drove into her yard on May 23rd. Plaintiff and defendant met in the kitchen, she apparently coming to that room from another room in her house. He asked if her husband was at home. She answered, "No." Then she "stepped through the door to lay the magazine on the table." True, she gives testimony, her idea was to escape out of the house, but defendant "grabbed me by both arms, . . . pushed me back toward the couch, . . ." and other details. No evidence was adduced, as has been noted before, that she offered resistance. And, till she and the defendant were in compromising position on the couch and her husband in the kitchen, she did not speak, except when she said her husband was away from home.

The husband had left home, after dinner on that day, to repair the roof on the house of a neighbor. On the way, finding his heifer out, he got the creature into the pasture and fixed the fence. When this was done, it was three o'clock, and the husband started back home, not by retracing his steps on the public road, but across lots.

The husband did not come directly into the room where his wife was; he came into the barn, from barn to shed, through the shed, through the old kitchen, and thence into the kitchen proper. It is significant, especially in the absence of any offer of explanation by the plaintiff, that the presence of the husband in the kitchen and the outcry heard by the husband, "Ralph Norton, get out of here!" were coincidental.

*Let the motion be sustained.*
*Verdict set aside.*
*New trial granted.*