Ida W. Turcotte *vs.* Lena B. Dunning.

Penobscot.     Opinion, April 6, 1934.

*Fellows & Fellows*, for plaintiff.
*Charles P. Conners*, for defendant.

Sitting: Pattangall, C. J., Dunn, Sturgis, Barnes, Thaxter, Hudson, JJ.

Pattangall, C. J.    On motion. Assumpsit to recover $870.00 claimed to be due for board, room, care and nursing of an invalid under an alleged agreement of defendant to pay the same; in addition thereto an account in favor of plaintiff's son amounting to $2,225.00 based on services rendered in connection with the case

and assigned to plaintiff. Plea, general issue and statute of limitations. The assigned account was clearly barred by the statute. It was not considered by the jury and need not be further discussed. Verdict for plaintiff in the sum of $1,128.97. This result was apparently reached by awarding the full sum of $870 claimed to be due plaintiff personally and adding thereto $258.97 as interest. On no theory of the case could interest to this extent be justified. In any event, the verdict is wrong in amount.

The issue presented here is whether or not the evidence warranted a finding in plaintiff's favor of the principal amount stated above with the addition of interest properly computed.

We approach the decision of that question with some hesitation. The issues involved were purely of fact. The record discloses a sharp conflict of testimony and we are fully aware that jurors are the authorized triers of fact and are also judges of the credibility of witnesses. We neither desire nor intend to assume their responsibilities nor to usurp their powers; but if a result is reached by them which is so out of accord with any reasonable interpretation of the evidence that we can not place upon it even the stamp of a reluctant approval, our duty is plain. This Court has not hesitated and will not hesitate to set aside a verdict which finds support only in testimony which on its face is incredible or is obviously untrue.

The story of the case begins in 1915 when one Hattie Chick, a woman approaching sixty years, first became an inmate of a hospital or nursing home conducted by plaintiff, remaining there until December, 1916. She resided elsewhere from the last named date until March, 1918, when she returned and remained until her death in October, 1931. During this period she was without means and for a time defendant, whose husband was a cousin of Miss Chick's, collected from various relatives sufficient money to pay the bills at the hospital, at first banking in Miss Chick's name, who gave weekly checks to plaintiff, and later giving personal checks to plaintiff.

During the first year, the charge was $12.00 per week, then $18.00, and when Miss Chick's condition became such that she required constant care, the compensation was increased to $35.00. This continued to January, 1924, the last payment by defendant

being on January 10th for the four weeks ending January 5th and amounting to $140.

Defendant then notified plaintiff that she had transferred to Mrs. Bertha Walker the balance of the money which she had collected for Miss Chick, that she would have no more to do with the matter, and that Mrs. Walker would attend to the payments so far as possible from that time on. In pursuance of this arrangement, defendant left with Mrs. Walker the sum of $128.50. Mrs. Walker collected further money and continued to make payments to plaintiff up to September 1, 1927, at which time the account is claimed to have been $870 in arrears. During a portion of that period, Mrs. Walker also paid plaintiff's son $425 for assisting his mother. In September, 1927, plaintiff sold the hospital, but Miss Chick remained there until her death.

Plaintiff had no dealings with defendant and, so far as the evidence shows, no conversation or correspondence with her between January, 1924, and June 27, 1928, when plaintiff mailed defendant a bill for the amount claimed. Nothing further was done until suit was brought in September, 1932.

Plaintiff claims that the reason for her delay in bringing the suit was that her arrangement with Mrs. Dunning was that the bills contracted after January, 1924, in so far as they were not paid by Mrs. Walker, should not be paid until after Miss Chick's death, and that she had a definite, positive agreement with defendant that whatever balance was due her should then be paid. But, the record contains a letter written by plaintiff to defendant under date of June 27, 1928, which negatives both of these propositions.

"Bangor, Me., June 27, 1928.

Mrs. George W. Dunning,
371 Union St.,
Bangor, Me.
Dear Madam:—

Inclosed find statements of accounts as yet unpaid concerning the care of Miss Hattie Chick.

These accounts are long past due, and as you are the one that looked after having her brought to my place I feel that you are the one responsible for the payment of the bills. If it

is not possible for you to pay the whole at one time, will you make small payments at regular intervals, until the bills are paid?

Trusting this will meet with your approval, I remain

Yours truly,

Ida W. Blake,

98 Court St., Bangor, Maine"

The position taken by plaintiff with regard to the claim assigned to her by her son casts suspicion upon the good faith of her case. In order to bring this account within the statute of limitations, credits totaling $425 appear as having been made at various dates between March 11, 1924, and June 13, 1927. But defendant introduced as an exhibit a bill rendered by the son for his services in attending Miss Chick at $35.00 per week from October 27, 1923, to October 24, 1925, for $2,600.00, against which was credited without date the sum of $425. The bill, however, was rendered October 20, 1925. He received no payment on account after that time and the attempt to bring his claim within the statute failed. Significant also is the fact that, although plaintiff and her son both strenuously insist that they looked to defendant and defendant alone for their pay and that their reason for doing so was because of an express agreement entered into between the parties to that effect, this bill rendered by the son in 1925 was made out to Mrs. Charles M. Walker who was described therein as debtor to Henry B. Blake.

Prior to the introduction of this document, the son testified that it was explicitly agreed between defendant, plaintiff and himself in October, 1923, that defendant was to pay both his mother's bill and his own against Miss Chick, but that they were not to be paid until after Miss Chick's death. He did not explain why if this were so he should have rendered the bill above referred to. He also testified that the first payment of cash which he received was $150 paid by defendant to him in March, 1924, although it appears that defendant ceased to make any payments on Miss Chick's account in January, 1924, and that whatever he or plaintiff received after that date came from Mrs. Walker.

He was the sole corroborating witness called by plaintiff and his testimony added nothing to his mother's case. Plaintiff's own testimony, already referred to, was most unsatisfactory. She stated that the charge agreed on for the care of Miss Chick in March, 1918, was $18 per week. Checks received by her during the following year strongly indicate that it was $12, which would necessarily reduce the balance due her by about $300, although she says that she was paid in full up to August, 1926. She stated that Hattie Chick never paid any part of the bill with her personal check but defendant produced seventeen checks for $12, each signed by Miss Chick, payable to plaintiff and endorsed by plaintiff, cashed during the year following March, 1918. She admitted that her own signature looked somewhat familiar but insisted that she had received no checks such as were shown her, although finally, after long cross examination, she agreed that she might be in error concerning the matter.

Without going into unnecessary details, her testimony may be summarized as evasive, inconsistent and contradictory. It does not satisfy the requirements necessary to sustain that burden of proof which the law demands in order to justify a verdict in her behalf. On the other hand, the testimony of defendant, corroborated in important details by that of Mrs. Walker and defendant's husband, is straightforward and convincing.

An impartial study of the record fails to reveal sufficient basis for the conclusion that any contractual relation existed between the parties. Defendant charitably endeavored to assist in caring for a needy family connection. She assumed no legal liability and she should not be penalized for having performed this kindly and praiseworthy act.

*Motion sustained.*