OCTAVE FILLION
*vs.*
PETER ALLAIN

Androscoggin.   Opinion, December 16, 1957.

*Platz & Scolnik,* for plaintiff.

*Clifford & Clifford,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

WILLIAMSON, C. J.   This is an action in general assumpsit to recover the reasonable value of plaintiff's services as a handyman for the period from August 2, 1950 to November 1, 1955. The jury returned a verdict of $4080. The case is before us on motion for a new trial on the usual grounds. The motion must be sustained.

The pertinent facts may be stated briefly:

The plaintiff, 85 years of age at the time of trial in January 1957, was in the employ of the defendant for 35 years in various capacities about the defendant's lumber business. In 1936 or 1937 the plaintiff became unable to carry on strenuous work on a regular basis. The defendant built a two room camp on his property for use of the plaintiff, who

stayed on as a general handyman. His work included shoveling snow, tending the furnace, mowing the lawn, feeding and caring for the horses, and working in the garden.

In 1944 the plaintiff was hospitalized with pneumonia. Acting upon the doctor's advice that the plaintiff would not live long if he returned to the camp, the defendant took the plaintiff into his home. There the plaintiff lived with the defendant and his family until he left the home in November 1955. During this period from 1944 to 1955 the plaintiff continued to perform his duties as a general handyman.

In 1946 a written agreement was drawn by defendant's attorney and executed by the plaintiff and defendant at the attorney's office. In brief, the parties agreed (1) that the existing arrangement should continue during the plaintiff's life; that is to say, it would continue even in the event of the defendant's death, and (2) that the plaintiff had no claims against the defendant. The plaintiff had an original of the agreement from the time it was executed and produced it at the trial.

From 1946 when the agreement was signed until the plaintiff left the defendant's home, the plaintiff received $3 or $4 a week in cash, in addition to room and board, laundry, clothing in small amounts, and once at least hospital expenses. In substance, the parties continued the arrangement existing when the 1946 agreement was signed, except that thereafter the weekly payments in cash were made as stated. On one occasion, and only one, during the nine year period from 1946 to 1955 did the plaintiff ask the defendant for money. This was in 1949 when he asked for money not for wages but to go to Canada. The close relationship between the plaintiff and the defendant and his family is shown by the testimony of the plaintiff:

"Q. You were treated like a member of the family, weren't you, Mr. Fillion?

A    Yes, they served me well."

The plaintiff contended that the 1946 written agreement was of no value whatsoever. He testified in substance that he was unable to read, that the agreement was read to him in English, which he did not understand, that he was given no further explanation, and that he signed it at the defendant's request believing he would receive some money therefor from the defendant. The defendant on his part stated in effect that he explained the terms of the agreement to the plaintiff in French, and that the plaintiff apparently understood the agreement. In brief, the plaintiff's position is that the defendant took advantage of his ignorance and of his dependence upon the defendant in securing the written agreement.

It will serve no useful purpose to rehearse the details of conflicts in the evidence. They are minor in nature and do not touch materially the situation.

We have here an elderly handyman living and working under the conditions described who now claims that for over five years he was not paid in full for his services, although he never requested or demanded payment beyond that which he accepted with apparent willingness and in any event without objection.

In our view of the record, the evidence is overwhelming that the plaintiff had an adequate understanding of the 1946 agreement, and that he lived with the defendant and his family and worked under the agreement with no expectation whatsoever of additional compensation. We think it plain that a person in the position of the plaintiff would not have so long delayed seeking the pay for which he brings this action. The finding of the jury that the defendant had unjustly deprived the plaintiff of wages for over five years is without credible foundation. "Believability and credibility may be strained till they snap." *Fish* v. *Norton,* 127 Me. 323, 326, 143 A. 171, 172.

The governing rule is well stated in *Turcotte* v. *Dunning,* 132 Me. 417, 418, 171 A. 908, 909, where the court says:

"The issues involved were purely of fact. The record discloses a sharp conflict of testimony and we are fully aware that jurors are the authorized triers of fact and are also judges of the credibility of witnesses. We neither desire nor intend to assume their responsibilities nor to usurp their powers; but if a result is reached by them which is so out of accord with any reasonable interpretation of the evidence that we can not place upon it even the stamp of a reluctant approval, our duty is plain. This Court has not hesitated and will not hesitate to set aside a verdict which finds support only in testimony which on its face is incredible or is obviously untrue."

and again in *Garmong* v. *Henderson,* 114 Me. 75, 80, 95 A. 409, 411, where we said:

"In considering a motion for a new trial on the ground that the verdict is against evidence it is not the province of the court to weigh the evidence for the purpose of determining the preponderance of it between the parties. That is the province of the jury. Where the evidence is conflicting, a verdict will not be disturbed, if it is found to be supported by evidence, credible, reasonable, and consistent with the circumstances and probabilities of the case, so as to afford a fair presumption of its truth, even though it may seem to the court that the evidence as a whole preponderates against the finding of the jury. A verdict will be set aside as against the evidence supporting it when the evidence is not such as reasonable minds are warranted in believing, as when it is incredible, or unreasonable, or inconsistent with the proved circumstances of the case; or when the evidence to the contrary of the verdict is so overweighing and so overwhelming as to induce the belief that the jury were led into mistake, or were so moved by passion or prejudice as not to give due consideration and effect to all the evidence."

The statement by Justice Dunn in *Walker* v. *Norton*, 131 Me. 69, 70, 158 A. 926, is clearly applicable: "But where, as here, on the whole record, no weight of evidence, adequate to satisfy the minds of reasonable men, fairly tended to support the jury's finding, the verdict can not be allowed to stand."

The verdict is explainable only if attributed to sympathy for the plaintiff. Sympathy, however, is not a lawful reason for assessing damages against the defendant. "Justice requires that (the verdict) be set aside." *Garmong* v. *Henderson, supra,* at p. 90. See also *Page* v. *Moulton,* 127 Me. 80, 141 A. 183; *Spang* v. *Cote,* 144 Me. 338, 68 A. (2nd) 823.

The entry will be

*Motion sustained.*
*Verdict set aside.*
*New trial ordered.*